By the Court. Slosson, J.
I shall first state what we deem to be the material facts of the case, and proceed to the questions of law to which they have given rise. The plaintiff, a married woman, brings this action, to recover certain millinery ware, which the sheriff, on the 23d of November, 1854, levied upon, in a store in Division street, under an execution, upon.a judgment against her husband, and which she claims to be her own separate property, “ being the proceeds of her own separate, and individual funds and money.”
The judgment against the husband was docketed, 11th February, 1854, for $263.04.
The defendant insists that the goods levied upon were the property of the husband, or that .he had a leviable interest therein. The plaintiff was married in February, 1853. The principal witness for the plaintiff was her own mother.
On the 1st of May, 1854, the mother let the store to her daugh- ■ ter, the plaintiff, for one year, at a rent of $500, “ to be occupied as *479 a millinery store for her own family.” After taking the store, she fitted it up as a milliner’s shop. She expended, in the purchase of stock, the moneys which belonged to her before the marriage, somé $395 in amount. Of this amount, $50 had been given to her, by her mother, in 1852, and deposited to her credit in bank before her marriage: the balance of the moneys consisted of her earnings, in her mother’s employment, at five dollars per week, until her marriage, and was deposited in the bank, to her credit, Hovember, 1853.
On the 24th of March, 1854, she drew out $200, and the entire balance in April following, for the purpose of purchasing her stock. The business of the store was carried on in her own name.
The mother says, -that “ the goods in the store, up to the time of the execution, were the proceeds of her own money, and the success of her business.” She employed five or six hands. The value of the property levied on was $483.50.
On the 24th of May, 1854, she effected an insurance on her stock, in her own name, for $1,000, under which policy a small loss was paid, in 1855, to her husband, who receipted for it in her name.
The husband had been in the clothing business, but had failed, before his marriage with the plaintiff.
He sometimes assisted in the store, and made sales to a small extent. He also made purchases, at times, of goods for the store, but not to any great extent, and he attended the store when' his wife was absent or sick. The plaintiff and her husband lived in the house in which the business was carried on.
The plaintiff relies on the provisions of the act of 1848-9, “ for the more effectual protection of the property of married women.”
Upon these facts, the main question is, whether a married woman, having, at the time of her marriage, moneys of her own, which, by the operation of the acts of 1848-9, are, without the intervention of trustees, secured' to her own separate use, free from liability for the debts of her husband, may, by virtue of those acts, invest her moneys in trade, carry it on in her own name, and hold the stock, with its accumulations, and the earnings and profits of the business, exempt from the claims of her husband’s creditors?
The right and ability of a married woman to carry on a trade, separate from her husband, and to hold the earnings of it, secure from the claims of his creditors, always depended upon his assent *480 and agreement, either given before marriage, and in consideration of it, or given subsequently to it, and upon a new and valuable consideration.
Where it was given before the marriage, it was given through the medium of an ante-nuptial contract, with trustees, to hold the legal title to the property or fund. The marriage constituted a valuable consideration, for the husband’s agreement. The trust was good in equity, and the title of the trustees good at law. The wife acted, in carrying on the trade, on the theory of being an agent of the trustees, who were entitled to the property, and the profits of the business, but, in trust, for her use.
If the agreement was entered into after marriage, it required a new and valuable consideration to support it, and trustees were also necessary.
In equity, in which court the husband would be considered as trustee for the wife, a more liberal rule prevailed, and an ante-nuptial agreement in writing, by which the wife was permitted to carry on a trade on her separate account, was good without the intervention of trustees, and so after marriage, his mere permission or consent was enough to authorize her to carry on the trade, but in the latter case, unless such permission was founded upon a valuable consideration, his creditors would be let in to assert their claims to the stock in trade. (Story’s Eq. Juris. 8, 1385, 6, 7; Roper on Husband and Wife, ch. 18, § 4; Id. ch. 8, § 2; Jarman v. Worlston, 3 T. R. 618; Harelington v. Gill, 3 T. R. 620, note; Fonblanque’s Eq. 1 ch. 2, § 6, n. a.)
But the wife, whether trading in pursuance of an ante-nuptial agreement, or of an agreement entered into with the husband after marriage, could not, in law, bind herself by obligations created in her own name. Such obligations would be void, and if she received securities in her own name, as for example, a promissory note, payable to her own order, such security became at once the husband’s property, and she could not, by endorsement, divest him of the title, so as to enable the endorsee to maintain an action on it. (Roper, ch. 18, § 4, p. 171, 2; Barlow v. Bishop, 1 East. 432.)
In equity, the rule would probably be different, as that court, acting on the principle of her power to act as a feme sole in respect to her separate property, would establish the debt against herself in respect to her separate estate. (Roper, ch. 18, § 4, p. 172.)
*481 Thus it will be seen, that the right of the wife to trade on her own account, required absolutely the assent of the husband; his marital rights in her time, company, and services could not be impaired without his agreement or acquiescence, and so far as he was himself concerned, such agreement or assent though partly voluntary, would be binding, but as against his creditors, a valuable consideration to support the assent, was necessary, and at law, the intervention of trustees to hold the legal title, and this whether the assent was given in an ante-nuptial contract, or an agreement after marriage.
Such was the law before the statutes in question were passed, (1848-9,) and such, apart from those statutes, is undoubtedly still the law.
Have these statutes created any difference or change, or introduced any new rule in relation to this subject ?
They have undoubtedly dispensed with the necessity of trustees to protect the wife’s property from the husband and his creditors, whether owned by her at the time of her marriage, or subsequently acquired by her by inheritance, gift, grant, devise, or bequest, from any person other than her husband’s, but this of itself gives her no right to deal with such property in the way of trade, as a feme sole, without the husband’s assent. There is nothing in the language of the statute, from which such a right can be inferred. The statute equally protects the “ rents, issues, ■ and profits” of the property, as the property or fund itself out of which they spring, yet this language does not certainly imply profits to be made in a trade; the statute refers in these words to such profits and issues only as naturally flow from the fund, such as rents, interest, and probably the savings from both, which were always protected where the wife had separate property, independently of any statute. (Clancy, ch. 8.)
A critical examination of the language of the statute will show, that the great object to be secured by it, was the protection of the property of the wife, without the intervention of trustees, from the marital rights of the husband, and through him of his creditors, and also to give to her the freedom and capacity of a feme sole, for the purpose of alienating and devising the same, neither of which was she legally competent to do before the statute, but that beyond this, the statute never intended to go, nor designed *482 further to interfere with the common law rights of the husband in the personal property of the wife, than to suspend in her favor the operation of the rule which made such property his of right, and deprived her at law of any separate ownership in it, or power of disposition over it. The statute seems never to have contemplated the case of a wife trading in her own right and name as a single woman upon the property it secured to her, and is wholly silent on the subject. Had the legislature intended to confer such a right, other, or additional language, clearly expressing such intention, would undoubtedly have been used in the statute.
Another serious difficulty exists in the way of giving such a construction to these statutes, and that is her incapacity in law to make contracts in her own name, which would be binding on herself. It has already been noticed, that even where she carried on such a business under an ante-nuptial or post-nuptial agreement, she acted in it as the agent of her trustees, and was incapable, at law, of making contracts in her own name which would bind her. The statutes in question, have certainly not in terms given her any additional power or authority in this respect. Have they done it by implication ? It is impossible to say this. Every requirement of the statute is fully answered without giving to the wife the slightest power to create obligations binding -on herself personally.
In Switzer v. Valentine, (10 Howard’s Rep. 109,*) a case arising in this court, a strong doubt was expressed by the court, though the case did not call for a decision on the point, whether these statutes authorized a married woman, having separate property, to become a general trader, and make valid contracts in respect to such trade.
In the case of Avery & Moody v. Doane, (reported in 3 Am. Law Reg. p. 229,) which arose in Wisconsin, and was tried in the United States District Court for that district, the effect of a law existing in that state, and identical, in all respects, with our own, from which it was copied, was fully discussed, and the court held, that the protection of the statute extended only to the separate property itself, and that she acquired, under it, no independent authority to deal, in trade, on her own account, and that she was still incapable of binding herself by contract, and could not sue or be sued, in her own name, in transactions of .trade.
*483 But, if it should be granted that the statute did confer this power on married women, it, certainly, could not be contended that it intended to extend its protection, beyond the identical property which constituted the separate estate of the wife, thus embarked in business, and the accretions, or profits, strictly resulting or flowing from it. If, therefore, the capital invested should be more in amount than that of her own private funds, how is the identity of the two funds, or of the subsequent profits or accretions, to be determined ?
The present case, is an instance of this difficulty. The original stock, undoubtedly, exceeded the amount of the separate moneys invested in it, as we find that, in May, she effected an insurance on it to the amount of $1,000, which must be assumed to have been, at least, its value. It is impossible to say what particular portion of this stock was purchased with any particular moneys, and equally impossible to say whether any portion of the stock actually levied upon, six months afterwards, was, in fact, purchased with any part of the moneys originally invested, by her, in the business, or the profits of those moneys.
In Gamber v. Gamber, (18 Penn. R. 363,) the court held, that a married woman, claiming property, as her own, against an insolvent husband’s creditors, under the marriage act existing in that state, must make out her title clearly. She must show that she purchased it—when the purchase was after the marriage—with funds not furnished by her husband.
A law, substantially like our own, was enacted in Pennsylvania, in 1848.
In the case of Keeney v. Gord, (21 Penn. Rep. 349,) arising under that act, the court held, that the fact, that the property was purchased by the wife, amounted to nothing, unless accompanied by clear and full proof that she paid for it with her own separate funds.
We are clearly of opinion, that these statutes do not confer upon a married woman, having separate property, the right to deal with it in the way of trade, to be conducted in her own name, so as to hold it, and its accretions and profits;' made in the course of the business, protected from the claims and interference of the creditors of the husband.
I regard the legal condition of the wife, in regard to her separate *484 property, under these statutes, as precisely what it was at law under an ante-nuptial settlement with trustees. It is not better protected, and is clothed with no higher rights; and if, under such a settlement, a wife could not have become a sole trader, without a provision to that effect in the deed of settlement, neither can she now, by the mere operation of the statute.
To enable a married woman to carry on a trade, in her own name, in respect to her separate property, so as to protect it, and the earnings of her business, from the claims of her husband’s creditors, requires, now, as it did formerly, the assent of the husband, founded on a valuable consideration.
The reason, why a valuable consideration is necessary, is, that the services,- time, talents, and industry of the wife, are, in themselves, valuable, and the husband, as against his creditors, has no more right to part with them, voluntarily, than he has to make a voluntary settlement of property on his wife, in fraud of his creditors.
In the present case, there is no pretence of any ante-nuptial assent, founded on the consideration of the marriage, that the wife should carry on a separate trade, on her own moneys. Her right to do this, if it exists at all, must depend upon the assent of the husband after the marriage; but, though this may be assumed to have been fully proved, by his acts and acquiescences, it lacks, as against his creditors, the vital requisite of a valuable consideration to support it: the husband has gained nothing, and the wife has lost nothing, by reason of this acquiescence.
There is another circumstance, in the present case, which makes ’ it still clearer against the plaintiff’s right of recovery. Both husband and wife were living together, in the house in which the business was carried on, and apparently out of the business itself. He sometimes assisted in carrying it on, and occasionally made purchases and sales, and attended to the store in his wife’s absence. Under such circumstances, and in the absence of any evidence of valuable consideration, for his assent to her trading in her own right, she can be regarded in no other light than as his agent, in conducting the business.
He would be liable on her contracts, and the merchandise purchased would be deemed, in law, his own.
Judgment must be for the defendant, with costs.

 How reported in 4 Duer, 66.