By the Court. Woodruff, J.
There was no sufficient ground for ordering a new trial, as upon a verdict against evidence. The testimony is, in some degree, conflicting. That of the plaintiff’s principal witness, Charles Burger, is, in some particulars, contradictory of itself. The credibility of some of the” testimony was in question, but, after a careful examination of the evidence, as it appears on paper, we are clear that the verdict of the jury must stand. Even though we were suspicious of the truth of the plaintiff’s case, we should be constrained to say, that, with the witnesses before them, the jury were better able to dispose of the questions of fact, amid inconsistencies, contradictions and questions of integrity in the witnesses, than we are; and as the case now appears, on paper, we cannot say that a preponderance of evidence is not in the plaintiff’s favor.
As to the qualification, annexed by the Judge at Special Term, it must suffice to say, that the granting of the new trial was not a matter of right, if the verdict was not against evidence, and no rule of law was violated; and upon this view the Judge at Special Term appears to have acted. No error was committed by the Judge at the trial, in opening the case, after the parties had rested: it was entirely discretionary with him to do so or not.
The permission, therefore, given at Special Term to the defend *96 ants to try the question of value further, was a mere privilege—it was not a right.
If, therefore, no error in law was committed at the trial, the judgment and the order appealed from must both be affirmed.
Whatever subdivisions may be made of the subject, there is, in ' truth, but one question, viz.: Where a husband does nothing for the support of his wife, may she employ her separate property in trade, bestowing therein her own time and labor, and yet retain the capital and profits as her separate estate? or does the fact, that her services are devoted to the prosecution of the business, make the whole property her husband’s, or subject it to the payment of his debts?
The jury, in this case, must be taken to have found, that the property, employed by the plaintiff in her business, was purchased by her, with her separate estate received by her from her father.
That her husband is, what the witnesses have described, in terms of marked significance, an idle fellow;—
That he has, for some years, passed his time around porterhouses and beer-cellars, and does nothing for the support of his wife.
That, left in this way to provide for her own support, she has -occupied herself in conducting a meat shop, and invested therein her own separate property; and if any profits have been derived from this employment of her separate property, combined with her labor, both capital and profits, now, consist in the meats which the defendants have seized, as the property of her husband, and applied to the payment of a judgment against him.
The case of Freeman v. Orser, decided at the General Term of this Court, in March, 1866,* must be taken to decide, that where a married woman having a separate property engages therewith in trade, and she and her husband unite their labor and services in carrying it on, living together, apparently, out of the proceeds of the business so jointly conducted, and the profits of such business are added to the capital employed, the whole property loses its separate character, and ceases to be exempt from liability for the husband’s debts.
With this rule, as applied in the case then before the Court, we do not deem it necessary to contend.
*97 Nor do we deem it necessary to refer to the authorities discussed in the opinion of Mr. Justice Slosson in that case, nor to repeat the able argument by which the conclusions are sustained.
If, in the progress of those arguments, propositions are stated which are in conflict with the right of the plaintiff to retain her verdict in this case, we think they should be understood with reference to the state of facts then before the Court, and should be limited to the circumstances to which they are applied.
With the statement of the general rules applicable to the separate estate of a married woman, and her power over it, we fully concur.
The general rule, that a husband is entitled to.the services of his wife, is not abrogated by the Statutes of 1848 and 1849. But it may be plausibly, and, we think, justly insisted, that those statutes, in conferring upon her the power to receive, hold and dispose of property, as if she were a feme-sole, have, by necessary implication, authorized her to devote so much of her time to her separate estate as may be necessary for its care and disposal. A power to receive, hold and dispose of property, would seem to imply the right to employ therein so much of her time and labor as may be necessary, to enable her to avail herself of the benefit of the statute.
Again, the general rule, that a married woman is not competent to make contracts binding herself personally, is not altered by the statutes referred to. But, on the other hand, she could, in equity, charge her separate estate, before these statutes were passed; and she certainly has no less power, in that respect, under the acts referred to.
A married woman could not, as a general rule, become a sole trader, and enjoy the proceeds and profits of a business carried on by herself, except in virtue of a valid arrangement, amounting, in substance, to a settlement assented to by her husband. But, under such an arrangement, she would be protected in equity, and the profits of the business would be deemed her separate estate, and would not be liable for the debts of the husband. Such an arrangement was, ordinarily, effected by the intervention of trustees, and, now, it may, no doubt, be effected without that intervention.
*98 An agreement, made by the husband, in articles executed before marriage, in consideration of marriage, that she might carry on business on her sole account, would secure to her, her earnings in such trade, as her separate property, and those earnings would, in equity, be protected. Under the statutes referred to, trustees being dispensed with, she may, under such ante-nuptial contract, employ her separate estate in business so carried on.
A settlement, made by a husband after marriage, though binding on himself and his representatives, may be impeached by his creditors as a voluntary settlement, unless it be made upon valuable consideration. But it is not clear, that, under all circumstances, the assent of the husband to her employing her own time, in the care and management of her own separate property, is to be deemed a gift to her which creditors of the husband may impeach ; still less does it follow, because her services have been so devoted to the management of her property as to have added thereto, that, therefore, her husband’s creditors may treat the whole as the property of the husband, and seize it for his debts. We are not aware that the existence of the conjugal relation gives to the husband’s creditors such a right to her services, that the assent of the husband may not permit her to employ them, for her own benefit, in any manner she may choose. The argument is, that, though her husband’s creditors cannot compel her to labor for their benefit, still, if she do labor, and her labor is productive, although her husband assent to her enjoyment of the fruits of her labor, his creditors may dissent, and may take those earnings, in spite of both.
But there is a consideration, connected with the case before us, which may, and ought to affect the rights of the present plaintiff, in a manner not forbidden by the principles above adverted to, nor by the case of Freeman v. Orser.
The title of a husband to the services of his wife, is connected with his correlative duty to support her. The wife is entitled to her support, and, if her husband do not furnish it, she may earn it for herself. To this we apprehend there will be no dissent.
Again, under a statute, giving to her the right to hold, and enjoy, and dispose of her own property, and the rents,.issues and profits thereof, as if she were a feme-sole, she has the clear right to invest that property as, in her discretion, she sees fit; and *99 if such investment be productive of profits, the profits are her own; and we think it equally clear, that she may intrust it to a third person to trade therewith, and account to her for the profits.
And if her husband do not support her, and she is, therefore, put to the necessity of employing her own labor to obtain a support, we perceive no reason, in equity, why she may not devote that labor to the care and management of her separate property, making it thereby productive for her own maintenance.
This is no new doctrine. Though a husband could not, after marriage, make a voluntary settlement of property upon his wife" which creditors might not impeach; yet, it is said, that if a husband agree, in articles before marriage, that his wife may carry on business on her sole account, or if he permit her to do so afterwards, what she earns will be her sole and separate property, subject only to such demands arising in the trade which should properly be charged upon it. And the case of a married woman deserted by her husband, seems to us to be, in principle, like the present; for, surely, in a court of equity, it can make little difference whether a husband departs, abandoning his wife altogether, or neglects his duty to support her, spends his a time at porterhouses and dram-shops, virtually abandoning her, and adding to her trial the mortification of sharing in some degree his disgrace.
The case of Cecil v. Juxon, (1 Atk. 278,) is an example of desertion. The husband deserted his wife and children, and went abroad. Her friends provided her with goods with which to carry on business as a milliner, and permitted her to take the profits. Out of her savings, she lent money and received notes. After an absence'of some years, the husband returned, possessed himself of the goods used in her trade, and of the notes received for her loans. The Court of Chancery, on her application, declared, that she was entitled to them, as her separate property, and decreed accordingly.
See this subject discussed, and other cases referred to, 2 Roper on Husband and Wife, p. 171-2, etc.
We conclude, with saying, that this case is distinguishable from Freeman v. Orser, in this, that there the business was carried on by the husband and wife jointly, though in the wife’s sole name. The earnings of the wife were not distinguishable from those of her husband; it was impossible to identify her sole and separate *100 property; it had been absorbed in the business, and blended with his and her earnings.
We think, that where a husband does nothing for the support of his wife, and she, having separate property, employs herself in trading therewith, with his knowledge and assent, he neither assisting nor interfering therewith, such property does not become, in equity, liable for his debts. It remains, with its proceeds and profits, her sole and separate property.
This Court, being bound by the rules of equity, as well as of law, are bound to recognize the equitable rights of the plaintiff in this respect.
It follows, in our judgment, that there was no error in the Judge’s charge, of which the defendants can complain. The Judge went very far in their favor when he said, that, “ if she allowed her husband to interfere with the business,” the property must be treated as his property.
The judgment and order appealed from must both be affirmed.

 Freeman v. Orser (5 Duer, 476).,