# CHARLESTON.

## MERCER ACADEMY v. RUSK.

### March 4, 1875.

1875.
January Term.

1. When, in a deed of bargain and sale, made by a contributor to an incorporated academy, the clause of conveyance to the president and trustees is accompanied by general words, that, alone, might or might not create or imply a condition, upon the failure to perform which the estate in the president and trustees would, *ipso facto,* or upon entry, determine and revert to the bargainor, followed by words declaring and defining a condition on which the estate will revert; and, in a subsequent deed, without the appearance of any other intent than the release and extinguishment of the right of reverter, the general words are transcribed, and the special provision is omitted—the former words are not construed to create or imply such a condition.

2. In an action of ejectment, when an issue has been regularly made, though the oath administered to the jury, well and truly to try the issue joined, is sufficient, an oath, to speak the truth of and upon the premises, is not objectionable.

3. Proof that a corporation has an estate in fee in land—whether upon the dissolution of the corporation, the estate would revert to the grantor or not—is sufficient to support a finding by the jury, that the plaintiff has an estate in fee.

4. When, from documentary evidence and facts not controverted, the right of a plaintiff to a verdict is established conclusively, an instruction—whether it properly state the law or not—can not injure the defendant, and furnishes no ground to reverse a judgment in favor of the plaintiff.

Writ of error and *supersedeas* to a judgment of the circuit court of Kanawha county, rendered on the 19th day of June, 1874, in an action of ejectment therein pending, wherein the president and trustees of Mercer Academy were plaintiffs, and M. M. Rusk and the heirs

1875.
January Term.

Mercer
Academy
v.
Rusk.

of David Ruffner, deceased, to-wit: William H. Ruffner, David L. Ruffner, Arthur H. Howell and Ann Howell his wife, R. E. Putney, Jr., Susan E. Thayer, James Putney, Ann E. Doyle, Lewis Putney, Henry Norton and Mary Norton, (the latter defending by James H. Nash her guardian *ad litem*,) and Lewis Ruffner, Jr., and Ernest H. Ruffner as trustees, were defendants. The appeal was taken by the defendants. The other facts appear in the opinion of the Court.

The Hon. Joseph Smith, judge of said circuit court, presided at the trial therein.

*William H. Hogeman* and *James H. Nash* for the appellants.

*Smith & Knight* for the appellees.

HOFFMAN, JUDGE:

In and by an act of the General Assembly of Virginia, passed on the 18th day of February, in the year 1818, it was recited, that a number of the inhabitants of the county of Kanawha had by voluntary contributions, procured a suitable lot of ground in the town of Charleston, and had erected thereon a suitable edifice for the laudable purpose of educating the youth of the county; and had prayed that an act might pass, incorporating the then present and future contributors to that meritorious object: And, therefore, it was enacted that the then present trustees of the seminary and their co-contributors toward the procuring of the lot of ground and the erection of the building, should be a body politic and corporate, by the name of The President and Trustees of the Mercer Academy, and have perpetual succession: And that for the better governing and well ordering of the affairs of the corporation, there should be annually elected a president and six trustees, by the persons who had theretofore, or should thereafter, contribute the sum of $20 or upwards to the funds of the academy; which elections should be

held at the academy, on the 4th day of July, annually; but if an election should not be held on that day, the corporation should not, for that cause, be deemed dissolved, but it should be lawful to hold the election at such other day as might be provided by regulations and by-laws; and that the president and trustees in office should, in all cases, continue in office until their successors should be elected : That the president and trustees, by the corporate name, should be capable, in law, to purchase, receive and hold, they and their successors forever, any lands, rents, goods and chattels which might be purchased by, or devised or given to them for the use of the academy, and to lease or otherwise dispose of the same, in such manner as to them should seem most conducive to the interest of the academy; provided, however, that not less than a majority of the trustees, should be sufficient to authorize a sale of any real estate belonging to the institution : That the president and trustees should have power, from time to time, to make and establish by-laws and regulations, and amend or abolish them; and to appoint professors, teachers, a librarian, secretary and treasurer, and determine their salaries, and prescribe their duties, when not prescribed by the act: That the president and trustees, or any four of them,— who should constitute a board—should have power to receive subscriptions for the academy : And that it should be lawful for the president and trustees (or a majority of them) to enter into any contract with the Government of Virginia, or The President and Directors of the Literary Fund, under the provisions of any law having for its object a general system of education, to convey the whole property belonging to the academy, real and personal, to such person or body corporate, as might by law be authorized to receive it; or to make such other less extensive contract in relation to the academy, as in the opinion of the majority of the trustees, might be best calculated to advance and enlarge the usefulness of the seminary under their care and control.

1875.
January Term.

Mercer
Academy
v.
Rusk.

On the 1st day of March, in the year 1829, David Ruffner, of Kanawha, made a deed to the president and trustees of the Mercer Academy, in and by which Ruffner recited that he was desirous to promote religion and learning by offering and increasing the opportunity of public instruction and worship, and of fulfilling a promise and subscription theretofore made by him to the president and trustees of the academy ; and, in consideration of the premises and $5 paid by them, he granted, bargained, sold and confirmed to the president and trustees of the Mercer Academy, and their successors forever, (for the uses, purposes and trusts thereafter mentioned,) one acre of ground, in the town of Charleston, whereon Mercer Academy was then built—which was in the deed described ; to have and to hold the same forever, upon the conditions, trusts and uses following :  That the president and trustees and their successors should hold, use and enjoy, according to the meaning and design of the act by which they were incorporated, for public instruction, one moiety, the back or eastern part of the acre described ; and should permit the other moiety, upon Second street, to be built upon, improved or adorned for the purposes of public worship by the society of Christians called the Presbyterians, and by that society to be held, used and enjoyed for public worship in all time to come : and that in the event any place of public worship erected on that moiety should be afterwards destroyed by fire or otherwise, and within the space of six years thereafter should not be rebuilt, then the president and trustees and their successors should hold and enjoy the last mentioned moiety to the same uses and purposes with the other moiety, free from all condition, trust or use upon which it had been held before, whilst it was so built upon ; and that in the event that, for the space of six years together, there should be no academy or other house for public instruction on the back moiety, or for the same time on the other moiety on Second street, after it should have fallen to the president and trustees upon the event before

provided—there being during the space of six years no

place of public instruction on either moiety—then, in the first event, the back moiety should revert to the heirs of Ruffner, and in the second event—there being no place of public instruction on either moiety for the term of six years after the president and trustees should have held or been entitled to hold, use and enjoy both moieties for public instruction—both moieties should revert to the heirs of Ruffner.

On the 10th day of July, in the year 1832, Ruffner made to the president and trustees another deed, generally in the exact language of the former, except that he omits entirely the provision that " in the event that, for the space of six years, together, there should be no academy or other house for public instruction on the back moiety, or for the same space of time on the other moiety, after the same should have fallen to the president and trustees in the event provided for—there being during such term of six years no place of public instruction on either moiety—then, in the first event, the back moiety should revert to his heirs; and in the second event—there being no place o public instruction on the other moiety for the space of six years after the president and trustees should have held or been entitled to hold, use and enjoy both moieties for public instruction—both moieties should revert to his heirs."

By subscriptions and voluntary contributions, about the year 1818, an academy was erected on the back lot. Under the auspices of the president and trustees, public instruction was given on this lot most of the time thence until April, 1861, during the latter part of which time, one of the heirs of Ruffner was principal and conducted the school. From the commencement of the war till the 4th day of July, 1872, there was no meeting of the corporators or trustees. From July, 1861, until April, 1872, the property was frequently, and after that time until July, 1865, was continuously, in the possession of troops

1875.
January Term.

Mercer
Academy
v.
Rusk.

of the United States Army. The house was much dilapidated when it was left by the troops. From April, 1861, till the spring of 1866, there was no school on the property. In the year 1866, with the consent of individual corporators or trustees a school, and in 1867, a colored school, was conducted in the house on the lot In the year 1869, one of the heirs of Ruffner authorized M. M. Rusk to do so, and he took ·possession of the property.

On the 20th day of October, 1873, the president and trustees of the academy instituted an action of ejectment against Rusk, in which, subsequently, the heirs of Ruffner, on their motion, were made defendants with Rusk.

The facts stated appear in bills of exception.

There is no controversy about the moiety of the acre conveyed, lying on Second street, upon which is the meeting house, used and enjoyed by the society of Presbyterians.

At the first thought of a conveyance of land for an intended purpose to continue forever, or without limitation, upon an indefinite condition, expressed or implied, that on the failure of the grantee or bargainee to use the land for such purpose, the estate in him shall, *ipso facto*, or upon the entry of the grantor or bargainor, determine and vest in him, the question arises—What failure or cessation to use the land for such purpose will constitute a breach of the condition upon which the estate will determine and revert. It is manifest that such a condition, with its performance or breach, will be attended with embarrassing and perplexing uncertainty and difficulty in its application.

In the first deed already mentioned the bargainor avoided such vague and objectionable condition, and expressly provided a more certain and satisfactory one. He did not employ or rely upon the words in the deed, following those of conveyance, "for the uses, purposes and trusts" mentioned, to have and to hold "upon the

1875.
January Term.

Mercer
Academy
v.
Rusk.

conditions, trusts and uses" referred to, in themselves to constitute a condition, on the failure to perform which the estate would determine and revert; but he expressly provided, that in the event that for the period of six years, there should be no academy or house of public instruction on the back lot, then the same should · revert to his heirs.

From the recitals in the act of incorporation and the deeds, it would seem that Ruffner had agreed with the other contributors to the institution, that they should have the lot, and that they had erected thereon a convenient and suitable edifice for the purpose of educating the youth of the county of Kanawha, before the passage of the act; or, at any rate, that Ruffner had promised to convey the lot on some terms. and had subscribed money or property to the corporation, before the execution of either of the deeds. Though the relative value of the lot as compared with the expenses of edifices and improvements erected and contemplated at the time of the execution of the deeds, and properties, appurtenances and incidents of the academy, does not appear, it is probable that the former would be greatly outmeasured by the latter. The edifices that had been and might be constructed were liable to be destroyed by fire or force; or, whether this should happen or not, in the many vicissitudes of human affairs it might become impossible or very inconvenient for the corporators to perform the condition, and so prevent the forfeiture of the estate. And in such a contingency others might be as little censurable as Ruffner or his representatives. Under these circumstances, it may not have been deemed either just to the parties or propitious to the improvement and prosperity of the academy, that the lot should be subject even to the condition that, if for six years together, there should be no other house of public instruction thereon, it should, without a judicial enquiry or formal dissolution of the corporation, revert to Ruffner's heirs alone.

What, however, really influenced Ruffner's action, does not certainly appear, and is not at all indispensable to the construction of his acts. The latter, together —as far as they are now the subject of consideration—are unequivocal. By the execution of the first deed, the estate in fee, in the back lot, vested in the president and trustees of the academy, subject only to the right of Ruffner that on a breach of the condition, the estate should revert to his heirs. This right was all that remained in Ruffner. The latter deed contained a transcript of the words of the former (so far as this is important) except the language whereby the right of reverter was reversed, but it omitted that language. This deed should be construed with reference to the estate in the president and trustees and the conditional right in Ruffner at the time of its execution. In this state of the title the only intelligent purpose for which the second deed could have been made, and the only legal effect which it could accomplish, was to release and extinguish the contingent right of reverter, and so release the estate from the condition on which the right rested.

If there had been but one deed, which at the same time transferred the estate and contained the words "for the purpose and trusts" mentioned, to have and to hold, "upon the conditions, uses and trusts" mentioned, without the language that specified the condition and provided for the reverter, the question whether the words created a condition, on the failure to perform which the estate would, *ipso facto*, or upon entry, revert to the bargainor, might be more difficult to solve ; but the mere transcript of these words from the former to the latter deed, which—to effect the purpose intended—*omits* the definite and operative language with which the former words in the first deed were accompanied, should not be construed to create such a condition.

Whether, upon a proper proceeding for such purpose, the corporation might be dissolved, and thereupon the

1875.
January Term.

Mercer
Academy
v.
Rusk.

estate would revert, or the property would be distributed or otherwise disposed of, or whether, without dissolution, the purpose and trust mentioned in the act of incorporation and the deeds, might be enforced, are inquiries of interest; but they do not arise in this action.

The plaintiffs filed their declaration; the defendants pleaded that they were not guilty of unlawfully withholding the premises claimed by the plaintiffs in their declaration, and upon this they put themselves upon the country, and the plaintiffs did the like; and a jury was sworn the truth of and upon the premises to speak.

In the writ of right, as it formerly existed, the jury was charged to say the truth whether the tenant had more right to hold the tenement demanded, than the demandant had to have it, as he demanded it. By the statute relative to the action of ejectment, this action may be brought in the same cases in which a writ of right formerly might have been. In the action of ejectment, however, a different form of issue is prescribed, though no form of the oath to be administered to the jury is mentioned. In ejectment, the declaration contains an allegation as to the estate claimed by the plaintiff, to which, literally at least, the plea does not respond, and the issue does not apply; and yet the law requires that the verdict shall specify the estate. The oath that the jury shall speak the truth of and upon the premises—that is the declaration, plea and joinder—may be more comprehensive and appropriate than the oath, truly to try the issue joined,—which is the usual and doubtless sufficient oath. At any rate, whichsoever may be preferable, the oath to speak the truth of and upon the premises is as comprehensive as the other, and is not objectionable.

On the trial, the plaintiffs offered as evidence, the two deeds that have been recited and considered, and the defendants objected. The court allowed the plaintiffs to read the deeds, and the defendants excepted.—The reading of the deeds was proper.

The plaintiffs having read the act of incorporation and deeds, and proved that one of the defendants, claiming under the others, entered upon and was in possession of the lot before and at the time of the institution of the suit—which was not questioned—and the other defendants having, at their own request, been made such : And the court having instructed the jury that the second deed created in the plaintiffs an estate in fee upon a condition subsequent, liable to be defeated and revested in the grantor or his heirs, upon breach of the condition which was erroneous;—the defendants moved the court to give to the jury certain instructions as to what was a breach of such condition, and what was an excuse for such breach, which the court refused ; and the court gave other instructions on that subject, to which the defendants objected; and the defendants excepted. As, however, the documentary evidence and other facts not controverted, established conclusively the right of the plaintiffs to a verdict, whether the instructions or any of them properly stated the law or not, the giving or refusing to give them could not injure the defendants.

The jury found for the plaintiffs the premises described in the declaration, and that they were entitled to an estate in fee therein.—The plaintiffs had a fee in the lot, which was properly designated in the verdict—no matter what, upon a dissolution of the corporation, might be its destination.

The defendants moved the court to set aside the verdict and grant a new trial, because the verdict was contrary to law and evidence.—But, as is manifest, the verdict was clearly right.

It was considered by the court that the plaintiffs should recover the possession of the premises and costs.

The judgment of the court was correct, and is affirmed, with damages and costs.

Haymond, President, and Paull and Moore, Judges, concur with Hoffman, Judge, in the foregoing opinion.

JUDGMENT AFFIRMED.