# WHEELING.

KANAWHA VALLEY BANK *v.* WILSON *et als.*

Submitted January 14, 1884.—Decided December 6, 1884.

1. If, without any fraudulent intent, a man not indebted at the time make a voluntary settlement of real estate upon his wife, and he afterwards becomes insolvent, such voluntary settlement will not for that cause alone be set aside in favor of subsequent creditors of the husband.   (p. 255.)

2. If a man incur debts for moneys advanced or loaned to him, which with large amounts of other moneys of his own are voluntarily and without consideration deemed valuable in law used and invested by him in making valuable improvements upon the real estate so settled upon his wife, and in consequence thereof he

becomes insolvent, and the moneys so advanced or loaned to him remain unpaid, such creditors may charge the said moneys upon the said real estate in the possession of his wife.  (p. 254.)

2. If, to secure such moneys so borrowed and invested by him in making valuable improvements on the real estate so settled upon his wife, the husband executes a deed of trust upon his other lands and then becomes insolvent, and such debt remains unpaid, the creditor so lending such money is not confined to the security afforded by said deed of trust, but he may in such case charge his debt upon the real estate of the wife in which his money has been invested.  (p. 257-8.)

4. If a man largely indebted at the time voluntarily and without consideration deemed valuable in law incumbers all his lands and invests the proceeds of the incumbrance-debt in making valuable improvements upon his wife's separate real estate and then becomes insolvent, and the incumbrance remains unsatisfied, such incumbrance-debt will in a court of equity be regarded as a gift to the wife and fraudulent as to his creditors, whose debts existed at the time the incumbrance was created, and the said real estate of the wife in her possession, as well as the land incumbered, will be held liable for the payment of the debts of her husband which existed at the time the incumbrance was created.  (p. 257.)

5. If a deed be set aside as fraudulent and void as to creditors of the grantor, because the same was made with intent to hinder, delay and defraud such creditors, and a part of the consideration of such deed was the satisfaction of a *bona fide* debt due from the grantor to the grantee, such fraudulent grantee is not entitled to charge the lands thereby attempted to be conveyed with the amount of such *bona fide* debt.  (p. 260.)

6. If the court by its decree has cancelled and set aside such fraudulent deed and charged the lands thereby attempted to be conveyed with the amount of such debt due to such fraudulent grantee, such decree is erroneous and will for that cause be reversed.  (p. 262.)

7. A decree in a suit brought by a judgment-creditor should upon its face show the amount and priority of every debt against the land of the judgment-debtor, the person to whom the same is payable, and the fund out of which it is entitled to be paid ; and therefore a decree in such a cause, that the judgment-debtor (naming him) "do pay to the complainant and other judgment and trust creditors of the said debtor the several sums ascertained to be due to them respectively by the report of the commissioner contained on pages 33 and 34 of his report," is erroneous.  (p. 265.)

8. If in a suit brought by a judgment creditor against the judgment debtor to sell his lands to satisfy the liens thereon one of his cred-

itors has a lien on two parcels of land, to only one of which the other lien-creditors can resort for the payment of their debt, a court of equity will require such creditor having two securities to exhaust the one to which he only can resort for the payment of his debt, before he is entitled to charge the other land of the debtor, to which alone the other lien-creditors can resort.   (p. 258.)

9. If there is in a commissioner's report an error apparent upon the face thereof, which could not be affected by extraneous evidence, the party prejudiced thereby may take advantage of such error in the appellate court, although he may not have excepted to the report for such error in the court below.   (p. 264.)

10. If a commissioner inadvertently omits from his report a debt properly proved before him, and he discovers the omission after he has returned his report, and without special authority to do so he makes a supplemental report showing the existence and the proof of such debt, which is excepted to for that cause, the court should recommit the report to the commissioner, that such debt may be properly reported.   (. 259.)

Statement by WOODS, JUDGE:

In October, 1875, the Kanawha Valley Bank, on its own behalf and on behalf of all other judgment creditors of Alexander H. Wilson who would come in and contribute to the costs of the suit, filed its bill in the circuit court of Kanawha county, against said Alexander H. Wilson and his wife Mary E. Wilson, Joseph B. Chilton and his wife Martha E. Chilton, William E. Gillison trustee and William C. Blaine, and P. W. Simpson, J. Brisben Walker, Alex. Kelly and Enos Arnold sureties of said A. H. Wilson, and against a large number of judgment creditors of said Wilson, alleging that at the November term, 1874, of the said circuit court it recovered against said A. H. Wilson and Wm. E. Chilton, a judgment for $281.61 with interest from 19th of November, 1874, and $17.65 costs, which was docketed in the judgment lien docket of said county on the 30th of January, 1875; that at the spring term, 1875, of said circuit court, it recovered against said A. H. Wilson, Levi J. Woodyard and John W. Gentry a judgment of $364.86 with interest and costs; that at the same term of the said circuit court, it recovered against said A. H. Wilson, David Eagan and J. J. Thaxton a judgment for $701.24 with interest and costs; and that at the May term 1875, in the said court it recovered

against said Wilson for $1,868.82 with interest from the 10th of June 1875, and $33.66 costs; that all of said judgments are unpaid and constitute liens upon all the lands to which said Wilson had title legal or equitable; that its said judgments are liens upon a tract of land entered upon the assessor's books of that county as containing 405½ acres situated in said county; that on the 22d of February, 1875, Wilson conveyed to the defendant Martha E. Chilton, who was his sister—for the nominal consideration of $5000—a valuable tract of land in that county, consisting of 66½ acres of bottom and 230 acres of upland; that this conveyance was made to his said sister without any consideration deemed valuable in law, and the consideration of $5,000.00—a valuable tract of land in that county, consisting of 66½ acres of bottom and 230 acres of upland; that this conveyance was made to his said sister without any consideration deemed valuable in law, and that the consideration of $5,000.00, mentioned in the deed to her was never at any time paid; that she never owned any property, out of which she could have paid that sum, and that her husband Joseph B. Chilton was then a recently discharged bankrupt; that at the time this deed was made, plaintiff's action which resulted in its said judgment of $1,868.82, and actions of other creditors, which resulted in judgments, at the May term, 1875 of that court, against said Wilson for more than $10,000.00—were then pending all of which are still unpaid, and the bill avers that this deed to Martha E. Chilton was made to prevent the lien of the judgments rendered against Wilson at the spring term, 1875 of said court from attaching to the lands conveyed to her—and that the said deed being merely a voluntary conveyance without valuable consideration is fraudulent in law and void by express statute, and that the same was therefore made to hinder, delay and defraud the creditors of A. W. Wilson and especially the plaintiff, and that the same is null and void; that on August 1, 1870, said Wilson by deed of that date, conveyed said tract of 405½ acres of land describing it as containing 529½ acres, and the same conveyed to him by John Slack, Sr., recorder of said county, by deed duly recorded in his office, to the defendant Wm. E. Gillison in trust

to secure to said Blaine $1,500.00; that on August 27, 1869, one Hansford conveyed to the said Gillison in trust for the sole and separate use of said Mary E. Wilson the wife of defendant A. H. Wilson, a certain lot in the town of Charleston, W. Va., containing one-half an acre, upon which defendant A. H. Wilson has recently erected a large and commodious brick dwelling-house; that at the time he so built the same, he was largely indebted to the plaintiff, and that in building said house, said A. H. Wilson made a voluntary assignment to his wife of means and money which ought to have been applied to the payment of the debt due from him to the plaintiff, who claims he has an equitable lien on said dwelling-house and lot for so much money as said Wilson expended in the building of said house, while he was indebted to the plaintiff. The bill alleges the recovery of judgments for large amounts against said Wilson, by other of the defendants, and prays that the said deed from A. H. Wilson to Martha E. Chilton be declared fraudulent and void as to the plaintiff; that the lien of the plaintiff's several judgments against said A. H. Wilson be enforced against all his lands, whether his title thereto be legal or equitable, including said lands conveyed as aforesaid to Martha E. Chilton; that the equitable lien of the creditors of Wilson upon the said lot of land in Charleston conveyed to his wife, and particularly the lien of the plaintiff thereon may be enforced, and for general relief.

To this bill the defendants A. H. Wilson, Mary E. Wilson, Wm. C. Blaine, filed their separate answers, and Joseph B. Chilton and his wife Martha E. Chilton, their joint answer —to all of which the plaintiff replied generally.

The answer of Blaine relies upon the deed of trust executed to the trustee Gillison, conveying to him 529½ acres of land, to secure the debt of $1,500.00, therein mentioned, which was money lent by him to said A. H. Wilson, and avers that no part thereof has been paid, and that said 529½ acres conveyed to his trustee Gillison, is the same tract referred to in the bill as containing 405½ acres, and that his trust lien is the oldest lien on that tract of land.

The answer of the defendant Alexander H. Wilson, admits the existence of the debts, the recovery of the judgments, the

execution of the trust deed to Gillison to secure the debt of $1,500.00 to William C. Blaine; that he purchased from Hansford, and paid for the lot in Charleston, which was conveyed to Gillison in trust for his wife Mary E. Wilson, and that out of his own means he erected and paid for the dwelling house thereon, which he says was finished in the month of October, 1870; he avers that when he purchased and paid for the lot and for the building of the dwelling house, he was pecuniarily amply able to do so, that he then owed comparatively few debts, except some unsettled debts due to his sister Martha E. Chilton and her husband Joseph B. Chilton and the Blaine debt of $1,500.00. He admits that at that time he may have been indebted to the plaintiff in a moderate amount, but avers that the same has long since been paid by general deposits with it in the regular course of its business. He admits the execution of the deed of the 22nd of February, 1875, to his sister, Martha E. Chilton, for the consideration of $5,000.00 for the lands mentioned therein, which was the full value of the property. He avers that on the 22nd of February, 1875, he was indebted to Martha E. Chilton in a *considerable amount for board of himself and family, for money loaned and for other things*, which had never been settled, and that he was also indebted to Joseph B. Chilton *in a considerable amount* upon unsettled business transactions between them; that in consideration and discharge of this indebtedness, he sold and conveyed said lands to Martha E. Chilton in good faith without any fraudulent intent. He admits that he is the owner of the 405½ acres of land mentioned in the bill, encumbered with the Blaine debt of $1,500.00.

He avers that his father died many years ago, the owner of a large tract of land in Kanawha county containing 1,212 acres, of which he inherited one-ninth; that the land was sold in 1866 for taxes delinquent thereon for years 1861 and 1862 and purchased by him by the consent of a *portion of the heirs* and that on the 12th of October 1868 by deed of that date duly recorded, John Slack, Sr., recorder of Kanawha county, conveyed to him said tract of 1,212 acres of land; that in 1869 he obtained conveyances of the interest of his brother John C. Wilson and of his sister Julia Wilson in said tract

each being one-ninth thereof; that on October 9, 1871, by deed of that date, duly recorded on October 14, 1871, he sold and conveyed in consideration of $200.00 to Mary A. Wilson a portion of the said 1,212 acres containing 142 acres by metes and bounds; that on December 10, 1867, by deed of that date, his sister Mary S. Kelly, conveyed to said Gillison in trust for the sole benefit of Mary E. Wilson, the wife of A. H. Wilson one undivided ninth part of said 1212 acres for the consideration of $500.00, recited in the deed to have been in hand paid, and he avers that on August 1, 1870, when he executed to Gillison .the deed of trust to secure to Blaine his debt of $1,500.00—he did not in fact own 529½ acres of said 1212 acre tract, but only owned one-third part thereof—404 acres.

The answer of Mary E. Wilson is in all respects, substantially the same as that of her husband except that she says that the $1,500.00 obtained from Blaine was used by her husband in his business in which he was then engaged.

The joint answer of Martha E. and Joseph B. Chilton, admits the alleged bankruptcy of said Joseph B. on February 22, 1868, and his final discharge in June, 1869; that Martha E. Chilton is the sister of her co-defendant Alex. H. Wilson; they admit the execution to Martha E. Chilton of the deed of February 22, 1875, but they aver that the consideration for said conveyance, was the previous indebtedness of said A. H. Wilson to them severally of more than $5,000.00—a portion of which indebtedness had been of long standing, and that the said conveyance was accepted by them in discharge of this indebtedness. They deny the fraudulent intent charged in the bill, and that the time they accepted the conveyance they had any knowledge of any fraudulent intent on the part of said Wilson or that they knew he was insolvent, or pecuniarily embarrassed. They aver that they accepted the conveyance in good faith in discharge of said indebtedness—and that Martha E. Chilton inherited from her father, John Wilson considerable real and personal estate, portions of which she still owns, other portions of which she has sold, and re-invested the proceeds; and they deny that any of the judgments named in the bill, are liens on the said land.

Neither the bill nor any of these answers are verified.

It is unnecessary to notice the answers of the other defendants.

The cause was referred to a commissioner to state and report the following account :

*First.* The nature, character and priority of the liens of the complainant, and of all other creditors upon the real estate of which the defendant, A. H. Wilson, is seized.

*Second.* What real estate the said defendant, A. H. Wilson, was seized at the date of the institution of this suit, its character, situation and value.

*Third.* What sums of money, if any, the defendant, Martha E. Chilton, paid the defendant, A. H. Wilson, for the lands described in his deed to her, dated 22d February, 1875, (Exhibit No. 4) when, and how paid.

*Fourth.* When, and at what time, and by whom, and out of what funds, was the house and other improvements constructed on the lot of land conveyed by James F. Hansford to the defendant, Mary Eliza Wilson, (Exhibit No. 5) and how much did the same cost?

*Fifth.* To which one of his creditors was the said defendant, A. H. Wilson, indebted at the time of the construction of the said improvements, and in what sum.

*Sixth.* That he report such other and further matter as either or any party may desire or the commissioner may deem pertinent.

The commissioner returned his report whereby it was ascertained that there was due to William C. Blaine the sum of $1.500.00, with interest thereon from August 1, 1870, and that the same was a trust lien upon a tract of land containing 529½ acres more or less, " being the same land conveyed to said Wilson by John Slack, sr., recorder of Kanawha county. He has also reported as valid claims against the said A. H. Wilson a large number of judgments, including those claimed by the plaintiff as well as those claimed by the several judgment creditors named as defendants in the bill.

The amounts of several of these judgments are twice reported, once for the amounts of the original judgments, and again for the amounts of judgments recovered on forthcoming bonds taken thereon, and others are reported for the full

amount of debt, interest and costs, with a note appended by the commissioner, that the judgment has been wholly or partially paid. It is true the commissioner has appended to his report what he is pleased to call a " recapitulation of all the liens upon the real estate of the defendant, A. H. Wilson, with interest calculated to June 1, 1876, said liens being on all the lands held by A. H. Wilson at the date of the institution of this suit," wherein he has stated the several liens, their dates, priorities, amounts and to whom due, and has ascertained that the three judgments of the plaintiff last named in its bill, amounting in the aggregate, on the 1st of June, 1876, to $1,404.61, and two judgments in favor of William A. Bradford, amounting on that day to the further sum of $168.40, were valid liens on the lands conveyed by A. H Wilson to Martha E. Chilton by said deed of February 22, 1875, and that they and all the other judgments were liens on all the lands owned by A. H. Wilson at the time the plaintiff instituted its suit; that the only lands then owned was one-third of the said tract of 1,212 acres, or 404 acres; that the only consideration for the execution of the deed of February 22, 1875, to said Martha E. Chilton, were the items of an account for moneys and other things long due from A. H. Wilson to Martha E. and her husband, Joseph B. Chilton, amounting in the aggregate, at the date of that deed, to $5,728.20 ; that the dwelling house and other improvements by A. H. Wilson erected on the Hansford lot, cost about $5,000.00, and that he invested in these improvements the $1,500.00 borrowed of said Blane, and other moneys of his own ; that at the time he made these improvements, said A. H. Wilson was indebted to Blane said $1,500.00, with interest from August 1, 1870, and to Joseph B. and Martha E. Chilton in the items of account before referred to, as the consideration of said deed of February 22, 1875. After the commissioner had completed and filed his report and before the same was acted on by the court, he reported further that he had inadvertantly omitted from his report, that said A. H. Wilson on October 15, 1870, was indebted to the plaintiff in the sum of $305.48, with interest from that date, amounting on June 1, 1876, to $407.04, as appeared from a copy of the plaintiff's account against him

filed with his report. From an inspection of which account it clearly appears, the correct balance due the plaintiff on October 15, 1870, was $405.48, which, with interest to June 1, 1876, would have been $542.38, instead of $407.04. The commissioner made the depositions as well as the items of the account of Joseph B. and Martha E. Chilton, the deeds, and the plaintiff's said account with A. H. Wilson, parts of his report.

To this report the plaintiff and the Clifton Iron & Nail Company, another judgment creditor of A. H. Wilson, excepted, because it reported the moneys and accounts alleged to be owing from him to Joseph B. and Martha E. Chilton, or either of them, as a consideration for the deed of February 22, 1875, and because it failed to allow all judgments against A. H. Wilson as liens on the farm conveyed by him to Martha E. Chilton, and also upon the house and lot conveyed to said Mary E. Wilson by Hansford. The defendant, Martha E. Chilton, excepted to the report, because it found that the property conveyed to her by said deed of February 22, 1875, was charged with the liens of certain judgments; and the defendant, Mary E. Wilson, excepted *first*, to so much of said report as was made by said commissioner, after the filing of his original report, and *secondly*, because the finding of the indebtedness of of A. H. Wilson as of October 15, 1870, and at the time of the erection of the dwelling house, is contrary to the evidence in the cause.

On June 27, 1879, the cause was heard, and the court by its decree sustained the exception of the plaintiff and said judgment creditor to the commissioner's report, except as to the sum of $500.00 with interest from August 6, 1872, reported to have been paid to A. H. Wilson by said Martha E. Chilton, as part of the consideration for the lands conveyed to her by the deed of February 22, 1875; and also sustained the exception of Mary E. Wilson to so much of said report, as was made by the commissioner after he had returned his original report to the court, and overruled the exceptions of Martha E. Chilton, and the report so modified by said exceptions was confirmed. The court thereupon dismissed the plaintiff's bill as to the defendant, Mary E. Wilson, with costs; and being of opinion that the said deed from A. H. Wilson to Martha

E. Chilton, dated February 22, 1875, was made with intent to hinder, delay and defraud the creditors of said Wilson, it was adjudged, ordered and decreed that the same be *vacated, annulled and set aside,* and that said Martha E. Chilton has an equitable lien on the lands therein mentioned for the sum of $500.00, with interest from August 6, 1872, which is first entitled to be paid out of the proceeds of the sale thereof, and then proceeds as follows: "It is further adjudged, ordered and decreed, that unless the defendant A. H. Wilson, or some one for him do, within ninety days from this date, pay to the complainant and other judgment or trust creditors of said Wilson, the several sums ascertained to be due to them respectively by the report of said Gallagher and contained on pages thirty-three and thirty-four of said report, and the costs of this suit;" that certain special commissioners therein named should sell, upon the terms therein prescribed, and in the usual manner, the said 529½ acres of land, and also the said lands described in said deed of February 22, 1875, which had been conveyed by A. H. Wilson to said Martha E. Chilton, and report their proceedings, &c.

From this decree the defendants, Martha E. Chilton and Mary E. Wilson, have appealed to this Court.

*Mollohan & Fontaine* and *W. H. Hogeman,* for appellants.

*S. A. Miller, E. W. Wilson, W. A. Quarrier* and *G. S. Couch,* for appellee.

WOODS, JUDGE:

It is contended by the counsel for the appellants, that the circuit court erred, *first,* in setting aside the conveyance from A. H. Wilson to Martha E. Chilton, dated February 22, 1875; *second,* in directing the sale of the 529½ acres of land, including the interest of Mary E. Wilson therein, without making his brother, P. H. Wilson, a party to the suit, and without having the 529½ acres specially assigned and laid off to him out of the 1,212 acre tract, and in directing a sale of the lands conveyed to Martha E. Chilton, before it was ascertained that the proceeds of the sale of the 529½ acres should prove insufficient for the payment of the debts of A. H. Wilson.

At the January term, 1881, of this Court, the appellee, the Kanawha Valley Bank, gave notice to the appellants that upon the hearing of the appeal it would ask this Court to correct the decree appealed from in the following particulars, alleging *first:* It was error to charge the lands described in the deed from A. H. Wilson to Martha E. Chilton dated February 22, 1875, with the sum of $500.00, with interest from August 6, 1872, in favor of said Martha E. Chilton; and *second,* in not charging the house and lot conveyed to Mary E. Wilson's trustee by James F. Hansford and wife, in favor of the Kanawha Valley Bank with so much of the money expended thereon by A. H. Wilson in building the house and other improvements, as was expended thereon by A. H. Wilson while he was indebted to the bank, to such an amount as he was then so indebted, and in not charging the same with the said debt of $1,500.00 due to William C. Blaine. At the time these errors were assigned the appellant, Mary E. Wilson, on motion of her counsel and with the consent of Martha E. Chilton and the appellees by their counsel, the appeal awarded her in this case was dismissed and she was made one of the appellees. None of the parties to this suit has called in question the validity or correctness of the debt of $1,500.00 due to Blaine, or of the several judgments against A. H. Wilson, reported by the commissioner. It does not appear, that on August 26, 1869, when A. H. Wilson purchased and paid for the lot in Charleston, which Hansford conveyed to Gillison trustee, for sole use of Mary E. Wilson, he was indebted to the plaintiff or to any of the judgment creditors mentioned in the bill, and there is nothing in the case to show, that the purchase of the lot, at the price of $425, was intended to defraud any subsequent creditor. In October, 1870, when he completed the erection of the dwelling house upon the lot, he had expended thereon at least $3,000.00 of his own moneys; and also the whole amount of the $1,500.00 borrowed from Blaine, and was indebted to the plaintiff, as appears by the supplemental report of the commissioner, $307.48 as of the date of October 15, 1870, which debt ought to have been reported as $407.48 as of that date. It is true the court sustained the exception of the defendant, Mary E. Wilson, to this indebtedness, found by

this supplemental report, as well as to the finding of the indebtedness of Wilson to any person as of the date of October 15, 1870. The proofs in this record leave no room to doubt that in October, 1870, when the dwelling house was completed, the defendant, A. H. Wilson, had to all intents and purposes, made a gift to his wife, of $3,000.00 of his own moneys, and also of the $1,500.00 borrowed from Blaine, and of the amount then due to the plaintiff. Both of these debts remain unpaid, the debtor has become insolvent and unable to pay the same by his own voluntary act, in making a gift of them to his wife, and the proof shows that the property in which the same are invested is still in the possession of the wife, who claims the right to hold the same free from the just demands of these creditors, thus defrauded for her advantage.

To permit the wife of a insolvent debtor under such circumstances to defeat the demands of her husband's honest creditors, on the grounds that he had invested the moneys so obtained by him, with all his own moneys, in improvements of her separate estate, not liable to his debts would do violence to the plainest principles of right and justice. The questions presented for our consideration are first, were the purchase of the lot from Hansford and the deed conveying the same to Gillison, trustee, for the sole benefit of Mary E. Wilson fraudulent as to the creditors of her husband, whose debts were then contracted, or as to those who subsequently became such; and secondly, were the advancements made by him which were invested in building said dwelling house fraudulent as to his creditors, and if so to which of them and to what extent?

Before a man has a right to be generous, even to his wife, he must be just to all of his creditors. No matter what amount of property a man may appear to own, he in fact can rightfully be said to own only so much thereof as may remain after the demands of all his honest creditors are satisfied. According to the principles of natural justice and equity, he holds his property in trust for the benefit of all his creditors with only a remainder for the benefit of himself, or the objects of his bounty.

If there be no creditors, or the amounts due to them bear only an inconsiderable proportion to the amount of his prop-

erty neither equity nor justice will restrain him from exercising his right of disposing of the same, in any manner he may please, not prohibited by law. This right when exercised in favor of his wife, or children for whom by the ties of nature he is morally bound to provide, is always upheld by the courts, unless and except in such cases, where it is made the instrument of injustice to others whose rights are paramount to those of the objects of his bounty. While the courts have always watched with jealous eye every gratuitous disposition of a debtor's property, which may place it beyond the reach of his creditors, yet it "would seem to be a consequence of that absolute power which a man possesses over his own property, that he may make any disposition of it, which does not interfere with the existing rights of others, and such disposition of it if it be fair and real will be valid. The limitations on this power are only those prescribed by law." By the first clause of the second section of chapter 74 of the Code of 1869 it is expressly declared that "Every gift conveyance, assignment, transfer or charge which is not upon consideration deemed valuable in law shall be void as to creditors whose debts shall have been contracted at the time it was made, but shall not on that account merely be void as to creditors whose debts shall have been contracted, or as to purchasers who shall have purchased after it was made." Under the construction given to this clause, it is immaterial what may have been the intention of the grantor or assignor, or whether there was present in the minds of the grantor or grantee any intention to defraud any person or not; or it even may appear that the intentions of the grantor and grantee were entirely innocent, and even laudable, yet if the "conveyance, assignment, transfer or charge" be merely voluntary, and "made without consideration deemed valuable in law" it is by the statute declared to be "void as to all creditors whose debts were contracted at the time it was made." But if there be no creditors of the grantor, or if there be no evidence of actual fraud intended towards those who may become his subsequent creditors, such voluntary conveyance will not for that cause alone be deemed fraudulent even to subsequent creditors and hence it has repeatedly been held that a voluntary settlement in favor

of a wife and children cannot be impeached by subsequent creditors on the ground of being voluntary, more especially if the voluntary settlement is only of an inconsiderable amount of the husband's estate. *Sexton* v. *Wheaton,* 8 Wheat. 229. A single debt of an inconsiderable amount will not make a voluntary settlement fraudulent, for every man must be indebted for the common bills for his house, although he pays for them every week. It must depend upon the value of the property conveyed, compared with his whole estate, and his pecuniary circumstances at the time. *Lush* v. *Wilkinson,* 5 Vesey 384. Where a bill was brought to establish a voluntary conveyance in favor of a wife and children the Master of the Rolls said "no doubt can be entertained on this case if the settler was not indebted at the date of the deed. A voluntary conveyance by a person not indebted is clearly good against future creditors. Fraud will vitiate the transaction; but a settlement not fraudulent by a party not indebted at the time although voluntary is valid. *Battersbee* v. *Farmington,* 1 Swanst. 106. In *Walker* v. *Burroughs* 1 Atkins 94 it was said by Lord Hardwick that in order to avoid a voluntary deed it was necessary to prove that the grantor was indebted at the time of making the settlement or *immediately afterwards. Stevens* v. *Oliver,* 2 Brown's Ch. R. 90. But if a man in insolvent circumstances or greatly embarrassed with debts make a voluntary settlement of any of his property upon his wife or children to the detriment of his creditors, such settlement as to them whose debts were contracted at the time it was made will be deemed fraudulent and; void *Lush* v. *Wilkinson, supra; Chamberlain* v. *Temple,* 2 Rand·384; *Hunter's Ex'rs* v. *Hunter &c.,* 10 W. Va 321. In *Sexton* v. *Wheaton, supra,* which·was a suit brought by a subsequent creditor of the husband to set aside a voluntary settlement made by him for the benefit of his wife and to charge the property settled upon her with the value of the improvements made thereon by the husband. In that case it clearly appears that the husband at the time he made the settlement, and the improvements upon the property conveyed to his wife, was not indebted to the creditor and the court held that the settlement upon·the wife, and the improvements upon the property conveyed to her, having been

made at a time when he was not indebted to the creditor, although voluntary was valid and that the claim for the improvements stood upon the same footing with that of the property conveyed in the settlement. We are therefore of opinion that the conveyance of the lot in Charleston to the defendant Mary E. Wilson by James F. Hansford, although voluntary was not fraudulent as against his creditors whose debts have been reported in this cause.

Was the said lot in the hands of Mary E. Wilson, justly chargeable with any portion of the moneys belonging to her husband invested therein, or expended by him in building the dwelling house thereon, and if so, to what extent, and in whose favor? If, after expending all his own money in erecting the dwelling house and other improvements, at a cost of $5,000.00 upon his wife's separate property, the defendant, A. H. Wilson, had on October 15, 1870, when he was indebted to the Kanawha Valley Bank $405.48, and to William C. Blaine $1,500.00, conveyed directly to his wife the tract of 529½ acres of land, without any consideration deemed valuable in law, no one would contend that such a conveyance could be sustained against the demands of those creditors, notwithstanding the embarrassed pecuniary circumstances, or the actual insolvency of her husband at the time of making such conveyance. Neither would the injustice done to these creditors be less apparent, if instead of conveying the land to her directly, he had authorized her to sell or incumber it for the full value thereof paid to her, and had ratified the sale made or incumbrance created by her, by conveying the land to her vendee or mortgagee. In either case the effect would be the same, a gift to the wife, at the expense of the creditors of the husband. The case under consideration, though differing in form, is precisely the same in principle. Instead of conveying the land to his wife, or permitting her to sell or encumber the same, and receive the proceeds, the husband encumbered the land for $1,500.00 lent him by Blaine, payable in a year thereafter, and within less than two months afterwards he in effect made a gift of the money to his wife by expending the same on the dwelling house erected on his wife's lot, for the comfort and convenience of his wife and *himself*, while the creditor remains unpaid, and the husband

by his liberality towards his wife has rendered himself insolvent. But it is supposed that as the debt of $1,500.00 due to Blaine was secured by the deed of trust upon the 529½ acres of land, that he has no right to complain of the misapplication of the money lent by him. But to this we may reply, that having become the creditor of the husband, he had the right to look to his whole estate for the payment of his debt, and he was not confined to the security afforded him by his deed of trust, which might or might not be an ample security. But whether it was so or not, it might, as in this case it did, stand as an obstruction to prevent other creditors from obtaining satisfaction of their debts, which could not be enforced against the house and lot; and that Blaine having two securities for his debt, ought not to be permitted to resort to the 529½ acres of land for the satisfaction of his debt, until he has first exhausted the house and lot; and the same may be said of the debt of $405.48 which was due the Kanawha Valley Bank at the time the defendant, A. H. Wilson invested the $1,500.00 borrowed from Blaine as well as the $3,000.00 of his own money in the erection of the dwelling house.

The question here discussed was considered by this Court in the case of *Rose & Co.* v. *Brown & Wife* in 11 W. Va. 122. In that case, the wife of Brown on September 30, 1872, purchased a house and lot at the price of $4,500.00, of which one-third was paid in hand, and the residue in two equal installments payable in one and two years thereafter. Three thousand dollars of the purchase money was a gift from the husband to his wife, made some time before her purchase and the residue furnished by him afterwards. When a bill filed by subsequent creditors of the husband whose debts were contracted between September 1, 1873, and September 11, 1874, to set aside the conveyance to the wife as fraudulent, and to charge the house and lot with the amounts of their judgments, this Court held, that the conveyance to the wife, though voluntary, was not fraudulent in fact, but that her husband did in fraud of his creditors voluntarily divert his means from the payment of his debts and invest them in said house and lot for the benefit of his wife; and that in so doing he had, in fraud of his existing creditors, without considera-

tion deemed valuable in law, diverted from their legitimate use, and invested in that house and lot more of his means than would have been sufficient to pay all of his said debts, and that the house and lot must be subjected to the payment thereof; and Johnson, Judge, delivering the opinion of the Court, said : " It is well settled that improvements, put upon the property in fraud of creditors, can be followed by them on the premises where they are put; and that the realty can in favor of the creditors be charged with the value of such improvements." *Lockhart & Ireland* v. *Beckley, &c.*, 10 W. Va. 87; 8 Wheaton, *supra.*

From these authorities and the facts appearing in the record we are of opinion that the house and lot, conveyed by Hansford and wife to the defendant Mary E. Wilson is chargeable with the amount of said Blaine debt, as well as with so much of the plaintiff's judgment of $1,868.82 as was due to it, at the time said dwelling house was completed; and that unless the same be otherwise paid, the said house and lot must be sold and the proceeds thereof, as far as necessary for that purpose, applied to payment thereof; and that for these reasons the circuit court erred in sustaining the exceptions of Mary E. Wilson to the commissioner's report and in dismissing the plaintiff's bill as to her; and that instead of sustaining her exception to the supplemental report of the commissioner showing that he had inadvertently omitted to insert in his original report the debt due from A. H. Wilson to the plaintiff, as of the date of October 15, 1870, and disregarding the same, the court should have recommitted the report to the commissioner that this debt might be properly reported.

Did the circuit court err in setting aside as fraudulent the deed to Martha E. Chilton dated February 22, 1875, and in charging the lands mentioned therein with the debt of $500.00 with interest thereon from August 6, 1872, due to her from A. H. Wilson ?

The evidence in the case warranted the conclusion reached by the circuit court, that this deed was made without consideration save only the debt of $500.00 due to Mrs. M. E. Chilton, and the same was made with intent to hinder, delay and defraud the creditors of said Wilson. While her debt

ot $500.00 may have been a just one, yet by taking the deed
of February 22, 1875, to secure the same, she has placed her-
self in the position of a creditor who having a just debt, and
desiring to secure the same has taken from his debtor, a con-
veyance of certain property, and at the same time inserted
provisions to delay, hinder and defraud other creditors, which
renders the deed for all purposes, so far as he is concerned,
fraudulent and void. *Goshorn's Executors* v. *Snodgrass, su-
pra.*

She stands, in this case, in the predicament of a purchaser,
who under the same circumstances, upon such a fraudulent
purchase, pays the purchase-money in cash. But to author-
ize the court to set aside a deed as fraudulent because made
to hinder, delay or defraud creditors, it is not sufficient that
this fraudulent intent exist in the mind of the grantor, but
the grantee at the time the deed was made must have had
knowledge or notice of, and participated in the fraudulent
act, and intent. If the grantee had such knowledge, or
knowingly participated in the execution of the fraudulent
act the deed will be void as to the creditors of the grantor,
although the grantee may have paid a full consideration for
the property thereby conveyed. In such case the deed is
void as to creditors, not because it was voluntary and with-
out consideration deemed valuable in law, nor because the
consideration was inadequate, but because it was made with
intent to hinder, delay and defraud the creditors of the
grantor. *Goshorn's Executors* v. *Snodgrass,* 17 W. Va. 717. As
between the fraudulent grantor and grantee the deed is valid
and binding, and the law leaves them where they have placed
themselves, and will neither aid such grantor to regain his
property nor such grantee to reclaim his purchase-money.
Baldwin, Justice, delivering the opinion of the Supreme
Court of the United States in *Barth* v. *McNutt,* 4 Peters 184,
says: "Public morals, public justice and the well established
principles of all judicial tribunals alike forbid the interposi-
tion of courts' of justice to lend their aid to enforce a contract
which began with the corruption of a public officer, and pro-
gressed in the practice of known wilful deception in its exe-
cution. The law leaves the parties to such contract as it
found them. If either has sustained a loss by the bad faith

of a *particeps criminis*, it is but a just infliction for premeditated and deeply practiced fraud." *Capehart* v. *Rankin*, 3 W. Va. 571; *Brown* v. *Wylie*, 2. W. Va. 502; *Claffin & Co.* v. *Foley*, &c., 22 W. Va. 434; *Livesay's Executors* v. *Beard*, &c., Id. 585. Applying these principles to the execution of the deed of February 22, 1875, we concur with the circuit court that it was made with intent to hinder, delay and defraud the creditors of A. H. Wilson, but we are unable to concur in the conclusion that a lien exists on the land described in such fraudulent deed, in favor of the fraudulent grantee for the $500.00 debt due to her from her grantor which formed part of the consideration of the deed. If the deed was fraudulent as to her, it can only be because she had knowledge of the fraudulent intent of her grantor, in which she knowingly participated. If under such circumstances, when such deed is set aside as fraudulent, she could rightfully charge the land so fraudulently conveyed to her, with the actual consideration paid therefor, it might as effectually operate to defeat the first claims of creditors as if the same were held valid; and such fraudulent grantee, by paying his fraudulent grantor the full value of the property would effectually place the same beyond the reach of his creditors. This would be offering a premium for dishonesty and a virtual repeal of the first section of chapter seventy-four of the Code. The evidence in the record fails to show that any of the pretended items of indebtedness of A. H. Wilson to Joseph E. Chilton and to Martha E. Chilton, except the said debt of $500.00 had in fact any existence, while they clearly show, that all of the pretended debts due to Mrs. Chilton, excepting only said $500.00 never were due to her, and never could have been due to her, and yet Joseph B. Chilton and his wife in their answer say, that when A. H. Wilson, on November 27, 1874, purchased the property specified in said deed of February 22, 1874, for which he then paid $5,000.00, he was honestly indebted to them severally in amounts together aggregating the sum of $5,000.00, and that in consideration of this indebtedness and for the purpose of discharging the same, and for no other purpose the defendant Wilson at the time of making said purchase, verbally agreed to sell and convey the same to Martha E. Chilton, and that in pursuance of this arrange-

ment and contract, and of no other whatever, he did execute to her the conveyance of February 22, 1875, in good faith, and with honest purpose. If this allegation of their answer and the testimony of Joseph B. Chilton taken in the case, be true, which is not controverted or denied, then it is clear that on November 27, 1874, and on February 22, 1875, the defendant Martha E. Chilton knew that her brother A. H. Wilson, had agreed to convey, and had in fact conveyed to her, an estate for which he had paid $5,000.00, for the nominal consideration of $5,000.00, every dollar of which except her debt of $500.00 was fictitious, in other words, that the conveyance except as that sum was voluntary and without consideration deemed valuable in law, and yet under this deed she claims title to said lands, against the demands of his creditors. These facts and circumstances leave but little doubt on our minds that at the time said deed was executed she had knowledge of, and she participated in the fraudulent intent of her grantor; and this conviction is confirmed by the fact that she had it in her power, by her own testimony, which was not taken in the cause to disprove and deny these facts bearing upon this important point; and we think it is a sound rule, that when a party to a suit has in his possession evidence to clear up any doubt or solve any difficulty and he does not produce it, the presumption is, that the evidence if produced, would be in corroboration of that already given against him. *Clifton* v. *Howard*, 4 How. 242; *Glenn* v. *Glenn*, 17 Iowa 498; *Goshorn's Executors* v. *Snodgrass, &c.*, 17 W. Va. 717; *Knight* v. *Capito*, 23 W. Va. 639.

We are therefore of opinion that the circuit court did not err in declaring said deed fraudulent and void, but it ought not to have declared the same absolutely void, but void only as against said creditors; but the court did err in declaring the debt of $500.00 of Martha E. Chilton a lien on the lands described in the deed of February 22, 1875. It remains to consider what interest the said A. H. Wilson owned in the tract of 1,212 acres of land which can be made liable for the payment of his debts. Assuming as true what is alleged by Wilson in his answer that his father John Wilson at the time of his death was the owner of the tract of 1,212 acres of land and upon his death "many years ago" the title to said

land descended to his nine children as his heirs, and that the same became delinquent for the taxes assessed thereon for the years 1861 and 1862, and that the same were sold by the sheriff of said county for such delinquent taxes and purchased at such sale by said A. H. Wilson on October 6, 1866 and that his sister Mary S. Kelly and her husband by deed dated December 10, 1867 conveyed her undivided ninth part of said 1,212 acres to Gillison trust for the benefit of Mary E. Wilson the wife of A. H. Wilson, and that afterwards, on October 12, 1868, the said tract of land was in pursuance of said purchase at such tax sale conveyed to him by John Slack, Sr., the recorder of said county by deed of that date and duly recorded in his office on that day; and that on October 9, 1871, by deed of that date he conveyed to Mrs. Mary A. Wilson, the wife of his brother Orestes Wilson, a parcel of said tract of said 1,212 acres containing 142 acres; these conclusions follow: *First*, that said Alexander H. Wilson by his purchase under said tax sale and by the recorder's deed made to him in pursuance thereof acquired all the title of the heirs of his father John Wilson, in and to the said tract of land which was vested in them at the commencement of the years 1861 and 1862; *Second*: that his title so acquired overreached and vested in him, all such title as was conveyed to said Gillison trustee by the deed from Mary S. Kelly; *Thirdly:* that the deed of trust executed by said A. H. Wilson on August 1, 1870, to Gillison to secure to Blaine his debt of $1,500.00 operated to convey to him all of said 1,212 acres of land not before that time, and after October 12, 1868, conveyed by him to any other person and that the tract of 142 acres of land conveyed to Mary A. Wilson is subject to said deed of trust, and *Fourthly*: that the several judgments reported by said commissioner are liens according to their several priorities, upon the lands described in the deed of February 22, 1875, and upon all of said tract of 1,212 acres of land, except the tract of 142 acres, conveyed to said Mary A. Wilson, subject to the prior lien of the trust deed to secure the Blaine debt.

It is however contended by the counsel for the appellants that the commissioner having reported that the interest of A. H. Wilson in the 1,212 acres was only one-third thereof,

it was error for the court to direct the sale of the 529½ acres instead of 404 acres.   It is true the report in this respect was was not excepted to but it was not necessary to except to it, even if the commissioner had been ordered to determine the question of law, involved in the construction of his title deed.   But he was not required to do so, and the error made by him in reporting that he was only the owner of one-third of the tract of 1,212 acres was apparent upon the face of the report, and the party prejudiced thereby may avail himself of this error in this Court although he may have failed to except to the report for that cause in tha court below.—*Reitz & Co.* v. *Bennett & Co.*, 6 W. Va. 418; *Mercer Academy* v. *Rusk*, 8 W. Va., 373; *Campbell's adm'r* v. *White, trustee*, 14 W. Va. 122; *Ward* v. *Ward*, 21 W. Va. 262.   The circuit court therefore erred in not holding the whole tract of 1,212 acres subject to the prior lien of the Blaine trust debt of $1,500.00, and in not holding the whole of said tract except the parcel of 142 acres conveyed to Mary A. Wilson as well as the lands described in said deed to Mary E. Wilson dated February 22, 1875, subject to the liens of said judgments and in decreeing the sale of said 529½ acres, which was only a part of the lands of said A. H. Wilson liable to trust and judgment liens, all of which should be exhausted before the lands conveyed to Martha E. Chilton, by the deed of February 22, 1875, can properly be sold.   It must not be overlooked in the proceedings which must be had in this cause before any decree of sale of the said lands can be rendered, that section seven of chapter 126 of the acts of the legislature provides that in a "suit brought by a judgment creditor to enforce the lien of his judgment by a sale of the land of such judgment debtor, no decree shall be entered for the distribution of the proceeds of the sale of such real estate, until the notice to lien holders prescribed by that section shall be given, and a report made in pursuance thereof by a commissioner, ascertaining the liens on said lands;" until this has been done, the commissioner's report, so far as it ascertains the liens and their priorities on the debtor's land ought not to be confirmed, because every creditor having a right to prove his debt, before such commissioner

may controvert the claim of every other lien creditor.

The decree rendered in this cause on June 27, 1879, is so carelessly drawn as to render its execution almost impossible. Upon its face it neither ascertains the amount or priority of any debt, or the person to whom the same is to be paid. It is true it refers to the "several sums ascertained to be due to the complainant and other judgment and trust creditors of Wilson the several sums ascertained to be due to them respectively by report of Gallagher, and contained on pages 33 and 34 of said report," and decrees that unless the same be paid, &c. Such a decree leaves every creditor to determine for himself and at his peril the amount intended to be decreed to him. As this decree must for other errors therein be reversed, it is not necessary to decide whether this error in the decree would of itself be sufficient to reverse the same; but we are of opinion that the decree should upon the face thereof, show the amount and priority of the several debts against said A. H. Wilson; the persons to whom each is payable, and the property or fund out of which each debt is entitled to be paid. We are therefore of opinion that so much of the said decree, as sustains a part of the exceptions of the plaintiff and the Clifton Iron and Nail Company, to the report of the commissioner, and as overrules the exceptions to said report by Martha E. Chilton, so much of said decree as declares the said deed from A. H. Wilson to Martha E. Chilton dated February 22, 1875, was made with intent to hinder, delay and defraud the creditors of said Alexander H. Wilson must be affirmed; that so much of said decree as declared the deed of February 22, 1875, be "vacated, annulled and set aside," is erroneous and should be amended, by declaring that the said deed is, as to the said creditors of said Wilson, fraudulant and void, and the *same as to them*, is set aside, vacated and annulled, and being so amended must also be affirmed; and that the residue of said decree must be reversed with costs against the appellants Martha E. Chilton and Mary E. Wilson, in favor of the plaintiff and the other appellees, except Joseph B. Chilton, as the parties substantially prevailing; and this cause is remanded to the circuit court of Kanawha county for further proceedings, there to be had therein, according to the principles settled in this

opinion, and according to the rules and principles governing courts of equity.

REVERSED.—REMANDED.