DEBORAH W. SHARP, by her next friend, *v.* J. P. MAXWELL and WIFE.

1. EVIDENCE: DECLARATIONS OF HUSBAND WHEN ADMISSIBLE FOR WIFE.—The declarations of the husband, made whilst a slave is in the possession of himself and wife, are admissible in evidence, as against him and those claiming under him, to prove title in the wife.

2. HUSBAND AND WIFE: SEPARATE ESTATE, WHAT IS.—Money acquired by the wife, by donation or by her own labor, previous to the passage of the act of 1839, in relation to married women, belongs to the husband, and a slave bought with it, by him, as agent for his wife, and expressly for her benefit, after the passage of the act, belongs to him, and not to the wife.

APPEAL from the District Chancery Court at Monticello. Hon. B. C. Buckley, vice chancellor.

Deborah W. Sharp, by her next friend, sued Maxwell and wife, for the specific recovery of a certain slave Antoinette, if to be had, and if not, for her value. Complainant claimed title by virtue of a

purchase of said slave made by her husband, for her and as her agent, in the fall of 1839.    She alleged that the purchase was made with her money, and that the defendants had purchased with full notice of her title, and against her remonstrance.    The defendants denied the equities of the bill, and insisted that the slave was the rightful property of the husband, and that he had full authority and power to sell.

The proof showed, that John Sharp, the husband of complainant, whilst the slave was in their joint possession, always recognized her title to her, and that he frequently then stated that she was purchased with the money of the wife.    The proof also showed, that a part of the money so used in the purchase, was given to complainant by her father, in North Carolina, in the year 1836, and the remainder, or most of it, was acquired by her from one Dodd, in 1838, as the price of services rendered by her in nursing a sick slave belonging to said Dodd; and that the slave was purchased, as alleged, in 1839.

In 1846, Sharp, the husband, sold the slave to defendants. · The proof was conflicting, as to whether defendants had notice of the complainant's title, when they purchased, and as to whether she assented to the sale or not.

The vice chancellor dismissed the bill, and complainant appealed.

*D. Shelton,* for appellant.

1. The husband's declarations are admissible, and the court below erred in suppressing the evidence on that point.    4 J. R. 233 ; 2 T. R. 53; 3 Har. & J. 426; 2 Phil. Ev. (Cow. & Hill's notes,) 387; 12 S. & M. 267; 1 J. R. 343; 14 Mass. R. 245; 10 J. R. 387.

2. The proof clearly showed, that the slave was bought with the money of complainant, and her title should have been sustained.

*J. F. Foute,* for appellee contended, that the money given to the wife by her father, and the profits of her labor, belonged to the husband; and admitting that the slave was bought by these means, she was the property of the husband, and he had a right to sell her.

HANDY, J., delivered the opinion of the court.

The merits of this case, depend upon the question, whether the money with which the complainant's husband purchased the slave Antoinette, was in law the separate property of the wife, or not; for if that be not clearly or satisfactorily shown, the title of the defendant should not be disturbed.

The declarations of the husband, made while the slave was in the possession of himself and his wife, as to the means by which the purchase-money was paid, are admissible against him and those claiming under him, to show that the separate property of the wife furnished the means to make the purchase. But the question here is, whether those declarations, together with the other evidence in the case, are sufficient to show that the money was in law, the separate property of the wife.

It is true, that the husband stated that the money belonged to his wife, and was furnished by her. But his declarations do not show how it was her separate means,—whether it was money which in law belonged to him, but which he permitted her to treat as her own, and which therefore he called her own, which is not unusual in many instances, when the wife has been the meritorious cause of acquiring the money, though it belongs in law to the husband,—or whether it came to her by or through him. This uncertainty, however, is removed, by the proof introduced in behalf of the complainant, to show how it was her separate means. By that, it appears, that the greater part of the money was given to her in North Carolina, by her father, in the year 1836,—which would render it the property of the husband; and so far as the residue of the money is traced as coming to her, it appears for the most part to have been given to her by the witness Dodd, about the spring of 1838. All this was before the purchase of the slave in the fall of 1839, and before the passage of the act of that year in relation to the rights of married women,—and of course, this money was in law the property of the husband. The residue of the money, even if it were satisfactorily shown to be her separate property, is a very inconsiderable portion of the purchase-money.

So far, therefore, as the proprietorship of the money by which the slave was purchased, is shown by the proof, it appears to have

belonged in law to the husband; and it is immaterial to the rights of persons claiming title under him, whether he regarded it as the property of his wife or of himself.

While the law is sedulous to protect the rights and property of married women, such protection will not be given unless when it clearly appears that the property is the separate estate of the wife ; and in this case, we do not think that the evidence is sufficient to establish such a separate property, especially to the prejudice of a purchase from the husband.

The decree is affirmed.