# CHARLESTON.

## BAILEY v. GARDNER.

Submitted January 25, 1888.—Decided February 25, 1888.

1. MARRIED WOMAN—SEPARATE EARNINGS OF WIFE—HUSBAND'S CREDITORS.

At common-law the earnings of the wife during coverture were the property of her husband; but in equity the husband might consent to her receiving such earnings, and they would be hers as against her husband and his devisees or distributees; but he could not permit her to receive such earnings as against the rights of his creditors. This rule of the common-law and chancery practice has not been changed by our statute (chapter 66, Code 1868) as to the rights of married women. (p. 96.)

2. MARRIED WOMAN—EARNINGS OF WIFE—HUSBAND'S CREDITORS.

The creditors have the right to seize such earnings by proper process against the husband, before they are reduced to possession by the husband; but are liable to be defeated in such proceeding. by the death of the husband before they are reduced to possession, as in such case they would survive to the wife. (p. 98.)

3. MARRIED WOMAN—EARNINGS OF WIFE—HUSBAND'S CREDITORS.

Where a wife during coverture, while living with her husband, earned money by sewing and washing, and with his consent bought two lots with the money, and the deed therefor was made to her, the creditors have a right to subject such lots to the payment of their claims. (p. 100.)

4. MARRIED WOMAN—EARNINGS OF WIFE—HUSBAND'S CREDITORS.

And where the wife, after thus acquiring the deed to.the lots, herself puts valuable improvements thereon with means not furnished by her husband, the creditor has the right to subject the whole property, including the improvements, to the payment of his judgment. (p. 105.)

*C. Hedrick* and *W. A. Quarrier* for appellants.

*Knight & Couch* for appellees.

JOHNSON, PRESIDENT:

This is a suit in chancery, brought in 1884 in the Circuit Court of Kanawha county, to enforce a judgment-lien. The bill alleges the recovery of a judgment for $697.05, with interest and costs, in favor of the plaintiffs against the defendant, T. J. Gardner; that said judgment is wholly unpaid, and is a subsisting lien on all the real estate of the said defendant; that said Gardner is the owner of two certain lots of ground near the mouth of Campbell's creek, in said county; that the said lots were purchased and paid for by said Gardner, and procured to be conveyed to his wife, Catherine Gardner, in fraud of his creditors; and that said Gardner, out of his own means, has expended a large sum of money in building upon and otherwise improving said lots. They pray that said conveyance be declared void as to their judgment, and the said lots subjected to the payment thereof. The defendants answered the bill, denying the fraud charged, and averring that "both of said lots were paid for by the defendant, Catherine Gardner, partly by money earned with her own hands and partly by money lent to her by her friends and relatives; and the improvements and buildings on the property were paid for in the same manner."

It is a fact found in the cause that the said Catherine Gardner contracted for and bought the land mentioned in the bill from Joel S. Quarrier and wife in the year 1880, and that she paid $200.00 for the land; that she obtained the $200.00 which she paid for the land by *taking in washing, sewing, and making and selling carpets,*—in other words, by her earnings while married to the defendant, T. J. Gardner, and while living with him; that before and at the time of the purchase she had no separate estate, unless her earnings can be considered such, and at the time of said purchase the said Gardner was largely in debt; that the note on which the judgment was recovered had been due for over six years; and that she knew of her husband's indebtedness. It may be regarded as a fact established that, at the time

this purchase was made T. J. Gardner was insolvent. The purchase-money for the lots, $200.00, was earned by the wife during coverture. The contract for the purchase was made in September, 1880. The improvements on the property cost $1.600.00. Of this $1,400.00 was put on it for Mrs. Gardner by her son, W. H. Gardner, and $200.00 Mrs. Gardner borrowed from her son-in-law, John W. Bracken; but it clearly appears that not one dollar in money or labor of the debtor, T. J. Gardner, went into the said property. The court held the deed fraudulent and void as to the plaintiffs' demand, and ordered the property sold, not to pay the $200.00, with interest from the first day of September, 1880, but to pay the plaintiffs' judgment, interest and costs, amounting to over $800.00. From this decree Catherine Gardner appealed.

This Court in *Jones* v. *Reid*, 12 W. Va. 350, without citing authority, recognized the universally conceded fact, that at common-law the earnings of the wife are absolutely the property of the husband; but founding its decisions in that case upon *Slannings* v. *Style*, 3 P. Wms. 334, as well as upon a number of other authorities cited, held, where with the husband's consent the wife earns money, with the agreement or understanding between them that it is to be hers, and the rights of creditors do not intervene, it will, in a court of equity, be given to her, as against the devisees or the distributees of the husband. The question whether under such circumstances, in a court of equity, she would be entitled to her earnings as against her husband's creditors, was expressly left undecided in that cause. That question we are compelled to decide here.

It sufficiently appears in this cause that there was an agreement or understanding between T. J. Gardner and his wife that the $200.00 paid for the lot, and which were the produce of her own earnings, were to be hers. Could she hold such earnings, as against her husband's creditors? We have made diligent search for precedents, and, except in the State of New Jersey, have not found a single authority which holds, that in the absence of a statute authorizing it, the wife, with her husband's consent, can, as against his creditors, hold her earnings. In New Jersey the decisions are not uniform.

In *Stall* v. *Fulton*, 30 N. J. Law 430, it was held that the earnings of the wife, upon express promise to pay her, belong to her, and not to her husband, until he does some act with intent to reduce them into possession, and, if he dies first, they survive to his wife; and if, with such proceeds, she buys land, and the deed is made to her before the conversion by the husband, the land belongs to her, and can not be seized and sold by his creditors under judgments against him; that the husband is not obliged to, nor is he guilty of any fraud against creditors, if he does not convert to his or their use the earnings of the wife. This decision was rendered in 1864; yet in 1866 (*Cramer* v. *Renford*, 17 N. J. Eq. 367) it was held that the wife's earnings and the avails of her labor during coverture belong to her husband, and he can not, as against his creditors, give or agree to give them to her; that real estate purchased with the wife's earnings during coverture belongs to the husband, and is subject to be taken for his debts.

In *Quidrot's Adm'r* v. *Pergeaux*, 18 N. J. Eq. 472, it was held that a husband may, as against his creditors, allow his wife to have, for her separate use, the earnings of herself, and of the labor of their minor children. In this case, however, it appears that the wife had a separate estate outside of her earnings.

In *Bank* v. *Sprague*, 20 N. J. Eq. 1, it was decided that although a husband may give to the wife her services and earnings as against his creditors, when she carries on a separate business, without his assistance, with her own means and on her own account, yet in all cases where a business is carried on by a husband and wife in co-operation, and the labor and skill of the husband are contributed and united with those of the wife, the business will be considered as that of the husband, and not of the wife, and the proceeds will not be protected for her as against his creditors; that the fruits of the wife's labor and skill, under such circumstances, are not her separate property, within the terms or intentions of the act for the better securing the property of married women.

In *Peterson* v. *Mulford*, 36 N. J. Law 481, it was decided that a husband may permit a wife to labor for herself, and

to appropriate to her own use the proceeds of her own labor, when received by her; and that such permission or gift is good against the creditors of the husband, if such proceeds have not actually been reduced into his possession.

As opposed to the New Jersey decisions are the following, among numerous others: *Coleman* v. *Burr*, 93 N. Y. 17; *Freeman* v. *Orser*, 5 Duer 476; *Goss* v. *Cahill*, 42 Barb. 310; *Smart* v. *Comstock*, 24 Barb. 411; *Adams* v. *Curtis*, 4 Lans. 164; *Raybold* v. *Raybold*, 20 Pa. St. 308; *Hallowell* v. *Horter*, 35 Pa. St. 375; *Bucher* v. *Ream*, 68 Pa. St. 421; *Whiting* v. *Beckwith*, 31 Conn. 596; *Hinman* v. *Parkis*, 33 Conn. 188; *Elliott* v. *Bently*, 17 Wis. 591; *Laing* v. *Cunningham*, 17 Iowa 513; *Duncan* v. *Roselle*, 15 Iowa 503; *Connor* v. *Berry*, 46 Ill. 371; *McMurtry* v. *Webster*, 48 Ill. 124; *Johnson* v. *Johnson*, 4 Har. (Del.) 171; *Henderson* v. *Warmack*, 27 Miss. 835; *Sharp* v. *Maxwell*, 30 Miss. 589; *Apple* v. *Ganong*, 47 Miss. 189; *Simmons* v. *Kincaid*, 5 Sneed 450; *Pinkston* v. *McLemore*, 31 Ala. 308; *Merriwether* v. *Smith*, 44 Ga. 541; *Dold* v. *Geiger's Adm'r*, 2 Gratt. 99; *Vance* v. *McLaughlin's Adm'r*, 8 Gratt. 289; *Campbell* v. *Bowles*, 30 Gratt. 652.

These authorities regard the wife's earnings as choses in action, and that by virtue of the marriage, at common-law, they belong to the husband, as much as any other property which he acquired by virtue of the marriage, and that, even before they were reduced to possession, he had the right to them, and could assign them, or, if the right of creditors did not intervene, he had the right to give them to his wife, or allow her to receive them; but that, as against his creditors, she had no more right to such earnings that she had to any other property of his. In the language of the court in *Pinkston* v. *McLemore, supra,* " the husband may, by gift or contract, create in his wife a separate estate in the proceeds of her own labor; the validity of such gift, as against creditors, being subject to the same rules which apply to other voluntary conveyances."

In *Dold* v. *Geiger's Adm'r, supra,* it was held that *choses in action,* and other property, to which the wife becomes entitled during coverture, are liable to the claims of the creditors of the husband, and a settlement thereof upon the wife, with the assent of the husband, before being reduced into

possession, will not protect such *choses in action* or other property from such creditors' claims.

In *Vance* v. *McLaughlin's Adm'r*, 8 Gratt. 289, it was held that a wife's interest as legatee in her father's estate, in the hands of the executor, may be subjected by the creditor of her husband by a proceeding by foreign attachment, when the husband resides out of the State. But, though the service of the process upon the executor creates a lien upon the wife's interest in favor of the creditor, yet if the husband dies, pending the proceedings, leaving his wife surviving him, the lien of the creditor is defeated, and the property belongs to the wife. This of course was so, because in that case the interest of the wife had not yet been reduced to possession by the husband. But as he had the *right* to reduce it to possession, his creditors had the same right, liable to be defeated by the husband dying before it was reduced to possession.

In the case of *Campbell* v. *Bowles*, 30 Gratt. 652, it appeared that a deed was made to a trustee for the separate use of a married woman, and that the consideration was paid by money derived from the wife's earnings, and there was no agreement, either *ante* or *post* nuptial, that she should be entitled to her earnings, and the husband, though during the time of these earnings generally absent from home, had not deserted her. It was held that the earnings of the wife were the property of the husband, and the real estate thus purchased subject to his debts. This is settled law when there is no statute to control.

Does our statute in this respect change the common law, and the general equity practice, where the rights of creditors are involved? Our statute provides that "all real and personal property theretofore conveyed, directly to a married woman, or to a trustee for her use, by any person other than her husband, as her sole and separate property, and the rents, issues, and profits thereof, shall be and remain her sole and separate property, as if she were a single woman; and the same shall in no way be subject to the control of her husband, or liable for his debts." Section 2 provides that "the real and personal property of any female, who may hereafter marry, and which she shall own at the time of the

marriage, and the rents, issues, and profits thereof, shall not be subject to the disposal of her husband, nor be liable for his debts, and shall be and continue her sole and separate property as if she were a single woman." The *third* section provides " that any married woman may take by inheritance, or by gift, grant or devise, or bequest, from any person other than her husband, and hold to her sole and separate use, and convey and devise, real and personal property, and any interest or estate therein, and the rents, issues, and profits thereof, in the same manner and with like effect, as if she were unmarried, and the same shall not be subject to the disposal of her husband, nor be liable for his debts; provided, that no married woman, unless she is living separate and apart from her husband, shall sell and convey her real estate, unless her husband joins in the deed or other writing by which the same is sold and conveyed." Here the important limitation "*from any person other than her husband,*" would prevent a gift from him to her, as against his creditors, from being valid. Here in these provisions is no authority, either express or implied, to authorize a husband, as against his creditors, to agree that his wife should have her own earnings; but to make it clear that the Legislature did not intend he should have such authority, we have but to look to the 13th section, which declares, that " a married woman, *living separate and apart from her husband,* may, in her own name, carry on any trade or business; and the stock and property used in such trade, and the issues and profits thereof, together with her own earnings, realized from such trade, business, *or otherwise,* shall be her sole and separate property, and shall not be subject to the control of her husband, nor liable for his debts." Sections 1–3, 13, ch. 66, Code 1868.

I have italicised parts of section 13. There certainly is, by the statute, no change made in the common-law or chancery practice, as to the wife's earnings during coverture.

I agree entirely with what Dixon, Judge, said in *Elliott* v. *Bently,* 17 Wis. 613. " It is somewhat remarkable, among the many beneficent changes recently effected by the legislation for the welfare and protection of married women, that the Legislature should have omitted to secure to the wife

the rewards of her individual skill and labor. The real and personal property owned by her at the time of marriage, or which she may receive after marriage, by gift, grant, devise, or bequest, from any person other than her husband, and the rents, issues, and profits thereof, are zealously guarded, and secured to her sole and separate use. But her earnings, the proceeds of her personal labor, beyond that which is required in the discharge of the ordinary duties of the household and family, and which are most frequently the married woman's only means of acquiring property, for the future support and comfort of herself and children, are left to the severe and rigorous rules of the common-law, except when the husband, from drunkenness, profligacy, or other cause, shall neglect or refuse to provide for her present support, or the present support and education of her children. Rev. St. ch. 95, § 4. This seems contrary to the spirit of modern legislation on the subject. If the property and its profits deserve protection from the acts or rapacity of the husband or his creditors, the earnings of the indigent, but frugal and industrious, wife and mother would seem to deserve it still more."

It is strange that our Legislature did not make some provision whereby a wife might, with the consent of her husband, be entitled to her earnings, produced by her extra exertions after she had discharged all her ordinary household duties. Many a good woman toils early and late to support her sick or disabled husband and her children, oftentimes by her needle, by teaching music, or in school, and it seems very hard indeed, after she has in this way accumulated something, with which she purchases a piano or sewing-machine, necessary to assist her in performing the extraordinary duties thrust upon her of supporting the family whose natural supporter is either unable, or from sheer worthlessness refuses to discharge the obligation to allow an old creditor of her husband to snatch it from her, and thus, it may be visit suffering on her and her helpless children. But hard as this case and thousands like it are, no relief can be afforded except by the Legislature. It is not for the courts to correct such hardships in the common-law. Courts, as it is, are often charged with legislating,—with producing " judge-made law."

The learned counsel for the appellant were eloquent when in their brief they said that "the opinion of men in reference to the capacity of women to engage in and manage ordinary business affairs has undergone a great change within the last half century. They were formerly prone to regard them very much as do the Turks, who believe that women have no souls, and restrict them to the seclusion of the harem, with its candies and coffee, cigarettes, intrigue, and insipidity. The christian woman, at least in modern times, gets a different training, and attains a higher standard ; and with a little experience shows a good capacity for business." If she is not sufficiently protected in her rights, and encouraged to put forth all her energies, in times of trial, for the protection, support, and education of her children, when he who has vowed to do all these things fails, through affliction or folly, then the Legislature must afford the remedy,—the courts dare not do so; for, by so doing, they would burst through that barrier the respect for which gives them all their power and influence. The deed is void as to the plaintiff's judgment.

Did the court err in requiring the whole property, with the improvements, to be subjected, not to the payment of what had been diverted of the husband's means in fraud of his creditors, but to pay the whole judgment, amounting, with interest and costs, to about \$800.00 ? In *Isham* v. *Schafer*, 60 Barb. 317, it was held that the law devotes all the property of a debtor, both real and personal, to the payment of his debts ; and if a debtor, instead of paying his debts, uses his personal property on the real estate of another, so that it becomes a part of such realty, for the purpose of defrauding his creditors, and to prevent them from obtaining satisfaction of their demands out of his property, with the knowledge and consent of the owner of the realty, the judgment-creditor may follow the property into the hands of the owner of the premises thus benefited, and fasten his judgment upon such premises, *to the extent of the debtor's property therein.*

In *Quidorts' Adm'r* v. *Pergeaux*, 18 N. J. Eq. 472, it was held that a deed taken in the name of the wife for property purchased with her separate estate is no fraud upon the

creditors, even if the taking title in her name was to avoid any claim by judgment against her husband, for debts which he then owed; but where the balance of the purchase-money for such property was paid out of the earnings of a business carried on in the name of the wife, but to which the skill and labor of the husband largely contributed, such property will be decreed to be held by the wife, in trust for his creditors, subject to her claim for the money advanced out of her separate estate.

In *Glidden* v. *Taylor*, 16 Ohio St. 509, it was decided that where a wife suffers her money to be employed by the husband and blended with his earnings, so that it can not be separated, the most favorable position she can be allowed to assume is that of a preferred creditor in equity, and, as such, entitled to her money and interest.

In *Shackelford* v. *Collier*, 6 Bush 149, it was decided that although a *feme covert* may acquire the possession of property as separate estate, yet if its acquisition was in consideration of the money or property of her husband, which was subject to the claims of his antecedent creditors, the wife's claim will generally be made to yield to those of the creditors; that so far as the separate estate of the wife entered into the purchase and production of the real or personal property in controversy, her title thereto is valid and sustained, and, as the savings of a *feme covert* out of her separate estate are hers, the products and accumulations of her separate estate must be included in estimating her present interest in said property. After securing the title and possession of the wife as to her separate estate, the residue is subjected as estate which passed to the assignee in bankruptcy.

In *Apple* v. *Ganong*, 47 Miss. 189, it appears that a tract of land was purchased by a wife, partly with money which she had before her marriage, and partly with her own earnings from sewing, and the deed was made to her. An execution for a debt of the husband was levied on the land, and she obtained an injunction. Simrall, J., in delivering the opinion of the court, said the Code "enables the wife to purchase property with what money she had at her marriage, or which accrued to her afterwards from the income of her property, or otherwise. No matter from what source the money comes,

she may so employ it, provided it is her money.  If it be the gift of a stranger, it is hers.  If it be derived from the husband, it is hers also, as against him, but not his creditors. That the personal earnings of the wife are not relieved by these laws from the marital rights of the husband is evidenced by the fact that the codifiers and the Legislature of 1871 thought it proper to place them upon the same footing as income from the wife's property.  We are therefore of opinion that the husband has an interest in the lands in controversy in the proportion that the wife's personal gains bear to the amount of money which she had at the time of her marriage, and the proceeds of her cotton, or other separate means, compared with the aggregate cost of the land.  These personal gains from her own labor, compared with the whole cost of the land, is the extent of interest of the husband which the creditors may have applied to their debt."

In *Rose* v. *Brown*, 11 W. Va. 122, the Court held the deed to the wife, though voluntary, was not fraudulent, as to the creditors of Brown, but that in fraud of creditors he diverted his means from the payment of his debts, and invested such means in said property so voluntarily conveyed to his wife, and that the creditors could charge the said real estate with the payment thereof.  Again, in *Bank* v. *Wilson*, 25 W. Va. 244, this Court held, where a person incurs debts for moneys advanced or loaned to him, which, with large amounts of other moneys of his own, are voluntarily and without consideration invested by him in making valuable improvements upon real estate settled upon his wife, his creditors may charge the said moneys upon the said real estate.

In this case there were $1,600.00 worth of improvements put upon the two lots purchased by Mrs. Gardner; $1,400.00 of them may be regarded as a gift from her son, and the other $200.00 she borrowed from her son-in-law.  It is a conceded fact in the cause that T. J. Gardner, the debtor, never contributed one cent to the improvement of the property.  The lots cost $200.00; the improvements, $1,600.00.  Under the rigor of the law, the earnings of a wife belong to her husband. He gave them to her.  Between them this was lawful.  As to the creditors he had no power to give them to his wife. She, without using one cent that the creditors could have the

least right to touch, put $1,600.00 of improvements on this property. Would it not be inequitable and unjust that the creditors should have the right to sweep this away? We have seen if he improves her property the money thus diverted will be made a charge on the land in favor of creditors. Then when she puts improvements on property bought with money which his creditors were in law allowed to seize, these creditors should only be allowed, to subject the lot, without the improvements. They are *ex equo et bono* entitled to have the value of the lots less the improvements; that is, to get the money that the debtor consented that his wife might take, and which the creditors were entitled to. They can either take the purchase-money of the lots, with interest thereon from the time it was paid, or they may have the value of the lots at the present time ascertained, and subject them to the payment of that sum. More than this, under the circumstances of this case, they are not entitled to receive. The lots do not belong to the creditors. They only have the right to charge them for a sum equal to their value, for their judgment. Their judgment, to this extent, may be satisfied out of the lots, unless it is paid. When this cause goes back it should be ascertained what the lots without the improvements are now worth, unless the plaintiffs are willing to accept the purchase-money and interest as the value. In either case a decree should be entered in the court below, giving a day to pay this sum, and, if not paid, to subject the property as it stands, with the improvements, to the payment thereof.

But my associates do not agree with me in this view; but hold as the deed was held fraudulent under the statute as to the creditors of Gardner, the whole property, including the improvements, is liable to be subjected to the full amount of the plaintiffs' judgment. The reason for this decision on this point is given in an opinion filed by Judge SNYDER, and concurred in by Judges GREEN and WOODS. Therefore the judgment must be affirmed.

SNYDER, JUDGE:

I concur in so much of the foregoing opinion as holds that the deed from A. L. Ruffner, trustee, to Catherine Gardner, for the real estate in the bill mentioned, is void as to the

creditors of the husband of said Catherine; but I do not concur in that portion of the opinion which exempts the improvements placed on the property, since the date of the purchase by Gardner, from liability for the plaintiff's debt, and confines the relief of the plaintiffs to the value of said property exclusive of the improvements. The cases referred to and relied on in said opinion to sustain the latter conclusion are not analogous to the case at bar. They simply recognize and enforce the well-settled doctrine that, where no debt has been created between parties to a fraudulent transaction, and the personal property of the debtor has been merged or become a part of the real estate of another, the appropriate remedy for the creditor is to charge such real estate to the extent of the debtor's property thus made part of the realty.

According to this doctrine it was held in *Tenney* v. *Evans*, 14 N. H. 343, 40 Amer. Dec. 194, that a guardian could not purchase property and place it on the land of his ward to the injury of his creditors. So, in *Lynd* v. *McGregor*, 13 Allen 182, where it appeared that an insolvent husband had made extensive expenditures upon lands of his wife, and had increased their value, Gray, J., said : " The amount of such increase in value, for which no consideration has been paid by the wife, and which has been added to her estate ·by the husband in fraud of his creditors, in equity belongs to them, and may be made a charge upon land for their benefit." The rule is general that, where improvements have been placed by the debtor upon the real estate of another, both acting in fraud of creditors, they can be followed, and the realty charged in favor of the creditors with the value of such improvements. *Rose* v. *Brown*, 11 W. Va. 137; *Heck* v. *Fisher*, 78 Ky. 644; *Sexton* v. *Wheaton*, 8 Wheat 229; *Bank* v. *Wilson*, 25 W. Va. 242.

The case before us is radically different from any of these cases, and is controlled by a very different rule of law. Here as to the creditors the real estate belongs to the debtor. By both the English and the American common law, improvements annexed to the freehold are deemed part of it, and they pass with the recovery of the land. Every occupant makes improvements at his peril, even if he acts under a *bona fide* belief of ownership. 2 Kent Comm. 334. This

rule is founded upon the idea that the owner should not pay an intruder or occupant for improvements which he never authorized. This rigid rule of the common law was at an early period so far modified by the chancery courts that, when a *bona fide* possessor of property had made permanent improvements upon it in good faith, and under the honest belief of ownership, and the real owner was, for any reason, compelled to come into a court of equity, that court applying the familiar maxim that he who seeks equity must do equity, would compel him to pay for those improvements or industrial accessions, so far as they were permanently beneficial to the estate and enhanced its value. 2 Story Eq. Jur. §§ 799*a*, 799*b*; *Bright* v. *Boyd*, 1 Story 478; *Jackson* v. *Loomis*, 15 Amer. Dec. 347. But in respect to a *mala fide* or fraudulent occupant, the common-law rule remains in full force and unchanged, and as to such occupant a court of equity, no more than a court of law, will compel the owner to pay him for his improvements. *Dawson* v. *Grow*, 29 W. Va. 333, 1 S. E. Rep. 564; *Lowther* v. *Lowther*, 30 W. Va. 103.

While the deed to Mrs. Gardner in this case is valid and binding between the parties to it, and as to all persons except her husband's creditors, the equitable as well as the legal estate to the property is vested in her, yet as to such creditors the deed is absolutely void, and she has never been vested with any title or estate. The first part of the preceding opinion finds and decides that this conveyance was wholly void as to the debt of the plaintiffs. This finding necessarily determines that she was a *mala fide* purchaser and participated in the fraud by which the conveyance was made to her. It therefore inevitably follows that she, being a fraudulent purchaser, she was a *mala fide* possessor at the time she placed the improvements upon the property; and, being such, she is not entitled, either at law or in equity, as against the debt of the plaintiffs, to compensation for the improvements, or to have them exempted from liability for said debt. *Core* v. *Cunningham*, 27 W. Va. 206. The wife in this case occupies precisely the same position to the debt of the plaintiffs that she would if, at the time she made the improvements, the plaintiffs had had a positive lien for their

debt on the property, and she had notice of that fact. No one could, with any propriety in such case, contend that she would be entitled to compensation for the improvements or to have them exempted from liability for such lien.

For these reasons I think the decree of the Circuit Court should be affirmed.

AFFIRMED.