# CHARLESTON.

HUMPHREY *et al v.* SPENCER *et al.*

Submitted September 7, 1891.   Decided January 26, 1892.

1. HUSBAND AND WIFE—FRAUDULENT CONVEYANCES—TITLE.

A deed from a husband conveying land directly to his wife, though void at law and passing no title, is valid in equity to pass a substantial estate.

2. HUSBAND AND WIFE—FRAUDULENT CONVEYANCES—TITLE—CON-STRUCTION OF STATUTES.

Such deed is valid in equity notwithstanding the words, "from any person other than her husband," in section 3, c. 66, Code 1868. That section, as it was before amendment in 1891, did not touch such deed, but left it as before the enactment of said section.

3. HUSBAND AND WIFE—FRAUDULENT CONVEYANCES—LIMITATION OF ACTIONS.

A voluntary conveyance, merely for that cause, can not be avoided by suit brought after five years from its date.

4. HUSBAND AND WIFE—IMPROVEMENTS—INTEREST.

Money expended by a husband in permanent improvements on land which is the wife's separate estate, though expended without fraudulent intent in fact, may be charged on such land for debts existing when such improvements were made. Interest should be allowed on such money only from the commencement of suit to charge it.

5. HUSBAND AND WIFE—IMPROVEMENTS.

In the absence of actual fraudulent intent, the value of the property, less the value of permanent improvements made with the husband's means, should be ascertained, as also the value of such improvements; and in case of sale, and inadequacy of its proceeds to pay both values, the creditors and wife should share therein, ratably, on the basis of such values.

*J. G. McCluer* and *Lewis & Tavenner* for appellants, cited 5 W. Va. 272; 26 Gratt. 354; 35 Ind. 181; Sch. Dom. Rel. 286; 94 Ind. 138; 66 Ala. 151; 27 W. Va. 306; 10 Pet. 583; 4 Rand. 282; 14 Johns. 498; 3 Johns. Ch'y 378; 26 Gratt. 354; 22 W. Va. 357–370; 10 W. Va. 87; 19 Ill App. 398; 34 Kan. 22; 2 Warr. Vend. 629; 2 Lom. Dig. 432; 11 Wheat. 199; 2 Rob. 341; 10 S. E. Rep. 637; Code

| 36 | 11 |
| 37 | 388 |
| 36 | 11 |
| 39 | 363 |
| 36 | 11 |
| 41 | 157 |
| 41 | 387 |
| 36 | 11 |
| 43 | 171 |
| 36 | 11 |
| 48 | 451 |
| 36 | 11 |
| 52 | 219 |
| 36 | 11 |
| 54 | 466 |
| 54 | 467 |
| 36 | 11 |
| 61 | 615 |

(1891) c. 104, s. 14; 23 W. Va. 130; 27 W. Va. 468; 26 W. Va. 345; 4 Rand. 282.

*J. A. Hutchinson* and *J. B. Jackson* for appellees, cited 7 Leigh 366, 369; 29 W. Va. 441; Id. 622; Id. 389; 37 W. Va. 206–209; 32 W. Va. 212; Id. 452; 13 W. Va. 29; 11 W. Va. 137.

BRANNON, JUDGE:

Appeal by Sarah M. Neal and Cora Spencer from a decree of the Circuit Court of Wood county in a chancery suit brought by Charles Humphrey, executor of Selden Humphrey, deceased, and others, against said appellant and others. W. J. Hill, as sheriff of Wood county, appointed J. H. Spencer his deputy, and took a bond, dated 9th of January, 1871, conditioned for the faithful discharge by Spencer of his duties as such deputy sheriff, in which bond W. C. Keever, M. B. Pennybacker, H. N. Crooks, Jr., W. A. Cooper, A. Congrove, B. R. Pennybacker, Paul Neal, H. W. Buckley, Selden Humphrey, and John Flinn were sureties. Spencer did not faithfully perform his duties as deputy sheriff, and thus arose a liability in favor of Hill, the sheriff, upon said bond. Hill, having himself become embarrassed, assigned his assets to J. B. Jackson for the benefit of his creditors; and Jackson instituted suit upon said bond in the name of Hill, for his use as assignee, and recovered a judgment, on December 14, 1886, for seven thousand, eight hundred and thirty three dollars and eighty eight cents against said Spencer, Neal, and others. The executor of Selden Humphrey, and others who were debtors under said judgment, paid it, and then brought this suit for the purpose of collecting it from J. H. Spencer, as principal debtor, or on failure to do this, to enforce contribution from Paul Neal and others, as sureties in said bond, who had not contributed in paying said judgment.

Among other things in the bill not pertinent here, the bill attacked—as void as to said liability, because voluntary, and made with intent to hinder, delay, and defraud creditors, and because in violation of section three of chapter sixty six of the Code of 1868—a deed from Paul Neal to his wife,

Sarah M. Neal, for a tract of fifty one and three fourths acres of land, dated 11th of April, 1876, acknowledged same day, and recorded 19th of February, 1877. The decree avoided said deed, and subjected said land to said liability; and this is the ground of the appeal by Sarah M. Neal.

The bill also averred that the father of Cora Spencer, the wife of J. H. Spencer, had conveyed a small lot of land to her, and that her husband had, with his means, erected a valuable building upon it, costing from one thousand dollars to one thousand two hundred dollars and sought to charge said house and lot with said liability because of Spencer's application of his means in the erection of the house. The decree charged the property with a certain sum, and this is the ground of the appeal by Cora Spencer.

As to Sarah M. Neal. The bill suggests as a ground for the invalidity of the deed from Neal to his wife for the fifty one and three fourths acres of land that it is in violation of section three, chapter sixty six, Code 1868, though the brief does not insist on this point. It may be that the idea here is that as that section enables a married woman to "take by inheritance or by gift, grant, devise or bequest from any person other than her husband," the legislature intended to enact that conveyances from husband to wife should be void, and that she could not have a separate estate in property thus conveyed, but the conveyance should be no longer valid, even in a court of equity; in other words, to put upon it the seal of invalidity by express enactment for all purposes. This is not the proper construction of the section. This is a statute designed to remove, in harmony with the spirit and progress of the times and the advance of civilization, that harsh and even cruel feature of the English common-law, which gave to the husband, however improvident or unworthy, all his wife's personalty, in absolute estate, and her real estate for his life, so that either his dissipation or his creditors could render her and her children penniless. This statute was intended to enable her to hold her estate, owned at her marriage or afterwards coming to her, free from the husband and his debts. Such was the evil to be remedied, and we must not give the act a construction narrowing her powers, whereas the general

purposes of the statute was to enlarge them. We must not give the statute an operation to carry us backward and deprive a wife of a right which the benignity and liberality of courts of equity had before its enactment conferred upon her, to get rid of that fixed rule of common-law declaring void a conveyance from husband to wife, direct. That was the common-law rule; but equity upheld such conveyance. *Jones* v. *Obenchain*, 10 Gratt. 259; *McKenzie* v. *Railroad Co.*, 27 W. Va. 306; *Sayers* v. *Wall*, 26 Gratt. 354; 2 Bish. Mar. Wom. § 717.

Such was the case before the enabling statute. Surely, it was not designed to render her condition worse than before, but it was intended to ameliorate it. The statute was designed to empower her to take property from persons other than her husband, and hold it as separate estate, free from her husband's control and liabilities—a capacity which she needed—and leave conveyances from her husband just as they were, untouched by the act; to stand as before. And, moreover, there are no negative words, declaring that conveyances from husband to wife shall not be valid. Perhaps another aim in the use of the words "other than her husband" was to repel any inference that she might hold property conveyed from her husband against creditors, out of abundant caution. 2 Bish. Mar. Wom. § 363, says: "Of course, therefore, the direct conveyances which were good in equity, under the unwritten law, will be sustained in equity, under the late statutes." Such must have been the construction of the act by this Court, else it would not have upheld a deed from a husband to wife under the Code of 1868 in *McKenzie* v. *Railroad Co.*, 27 W. Va. 306. See Kelly, Cont Mar. Wom. p. 140, c. 6. § 10; *Lockwood* v. *Cullin*, 4 Rob. (N. Y.) 134. I notice that the legislature of 1891 struck out the words in question.

Thus, this deed, simply because it is between husband and wife, is not void, leaving the land in the husband; but while the legal title may have remained in him in the eye of a court of law, the substantial estate vested in the wife in the eye of a court of equity. But, of course, if such deed is in fraud of creditors, it is void.

The consideration for this conveyance is stated in it

as five dollars, but the evidence of Neal and his wife is that it was four hundred dollars, paid in 1856 into his hands, arising from the wife's interest in the estate of her mother, and other sums coming from the same source. This money, however, under the then law, was absolutely his. Of course, outside the rights of creditors, he could treat it as hers, and pay it in money or property. No note was given for it, and it was never repaid to her until 1876, in the conveyance of the land. It could not be considered a valid consideration, as against creditors. Being his money in law, it could not make her a purchaser for valuable consideration, but the conveyance must be looked upon as voluntary, though it may very properly be considered as bearing on the question whether the deed was fraudulent in fact, and is a circumstance tending to repel that charge. Both he and she say that she loaned it to him, he promising repayment, and when asked by her for it, he replied that he had no money but would convey her the land. Thus this conveyance is voluntary.

Was the conveyance fraudulent in fact ? No evidence of any kind was given to show that it was, but it is claimed that as the liability existed at the date of the deed, and the parties being husband and wife, the law presumes it to have been made with actual fraudulent intent. Both Neal and wife state on oath that they did not know that Spencer was in default as deputy-sheriff at the date of the deed. No evidence was given to show that they did know of such default, or that at its date it was known by any one. They flatly deny such knowledge. It was not a fixed, defined liability, but only contingent upon the failure of Spencer to properly discharge his duties. Had Neal been largely in debt; had even this debt then assumed a defined *status;* had it been then known that there was an actual liability under the bond—the case might be different. Then we might, considering the indebtedness and the relation of the parties, infer a fraudulent purpose under principles stated in *Burt* v. *Timmons,* 29 W. Va. 441 (2 S. E. Rep. 780) and kindred cases; but this is not the state of the case. A debt due from Neal as surety for some one to Phillips was then existing, but was paid with money borrowed from

Miss Mary Lewis, under a deed of trust upon this land given by Neal and wife February 20, 1878. This is a circumstance against the appellant; but, as a voluntary conveyance, the land was liable to the Phillips debt in Mrs. Neal's hands, and I hardly think that circumstance sufficient to overthrow the deed. The land being liable, Mrs. Neal's pledging it for money to pay the security debt was a necessity, not an admission of any fraudulent character of the deed. No other indebtedness appears. Neal says he owed only small bills, and his wife states that he owed nothing of moment, was entirely solvent and had solvent bonds on his father amounting to six thousand dollars or seven thousand dollars. Nothing contrary is shown.

In *Rose* v. *Brown*, 11 W. Va. 122, it was clear that Brown owed some debts, but not being indebted to embarrassment, Judge JOHNSON said that indebtedness was not enough to make a *prima facie* case of fraud as to existing creditors.

The bill, while charging that the deed was made with fraudulent intent, does not charge the wife with notice of it or with complicity therein. We can not find an actual fraudulent purpose in the execution of this deed and must regard it as voluntary; and, being voluntary, it would be fraudulent and void in law, and the land liable to the liability, were it not that more than eleven years had passed from the date of the deed to the institution of this suit, and section 14, c. 104, (1891) Code, limits a suit to avoid a deed which is void merely because voluntary to five years. This land is not liable to the plaintiffs' demand. In her answer Mrs. Neal avers that "from the 11th day of April, 1876, to the 17th day of May, 1887—more than eleven years—this defendant has had undisputed and undisturbed possession of the property claimed under said Paul Neal," paid taxes, and her title had never been disputed. This may not be a very formal defence under the statute but it shows very plainly that she relied on the time elapsed from the date of the deed from her husband; and we can not deny her the benefit of the statute for such informality—the defence of time being expressed clearly. "Anything in an answer which will apprise the plaintiff that the defendant relies on the statute of limitations is sufficient, if such facts are stated

as are necessary to show that the statute is applicable." *Tazewell* v. *Whittle*, 13 Gratt. 329. In the answer we have date of deed, claim under it, and length of time from its date, and defence by reason of time.

It is urged that *Bank* v. *Atkinson*, 32 W. Va. 203 (9 S. E. Rep. 175) rules this case. There it was sought to set up a debt in favor of the wife, because the husband had received money of the wife, as it is sought to do in this case; and I do not think that this can be done in this case any more than in that case. But in that case was a fixed ascertained liability on the husband by judgment, and he was indebted to at least embarrassment; whereas here it was indefinite, unascertained, and unknown to the parties; and more notably, as a difference between that case and this, the deed to the wife was dated only a little over three years before the suit to annul it, so that the five years provision did not protect it. My opinion there was induced more by the fact that I regarded it a voluntary deed than as intentionally fraudulent.

As to Cora Spencer. In 1872 Mrs. Spencer's father conveyed to her, shortly after marriage, a lot of land in Bellville, and a house was built upon it that year; and to its construction her husband contributed six hundred and sixty four dollars, and her father four hundred and forty five dollars. The bill asks that this property be subjected to said J. H. Spencer's liability by reason of the application of his money to the erection of said building. It is clear from the evidence that no set purpose to defraud was in either the husband's or wife's mind, in the application of the husband's money to the erection of this building, but it is useless to refer to the evidence as to this feature. But, though there was no fraud in fact in this act, it was a voluntary transfer or a gift of the money by the husband to the wife, just the same, in principle, as if he had conveyed her a tract of land. In principle this is so, and has been so regarded by this Court, as will appear from the opinion delivered by Judge WOODS in *Bank* v. *Wilson*, 25 W. Va. 257, and in that delivered by Judge JOHNSON in *Lockhard* v. *Beckley*, 10 W. Va. 87.

As such gift it is void as to a then existing liability, un-

der section 2, c. 74, Code. The bond given by Spencer then constituted a liability protected by that section, though it was only inchoate or contingent. Bump. Fraud. Conv. 503; 2 Minor. Inst. 614; *Hutchison* v. *Kelly*, 1 Rob. (Va.) 136; Code, c. 74, s. 9; Waite, Fraud. Conv. § 90.

It is true, fifteen years have elapsed from the erection of the house to the commencement of this suit, and five years bars a suit to avoid a voluntary transfer; but we have looked in vain through the record for a defence in any mode under the statute. The statute of limitations must be in some way relied on by demurrer, plea, or answer. *Colvert* v. *Millstead*, 5 Leigh, 88; *Hickman* v. *Stout*, 2 Leigh, 10; *Tazewell* v. *Whittle*, 13 Gratt. 344; *Seborn* v. *Beckwith*, 30 W. Va. 774 (5 S. E. Rep. 450); *Jackson* v. *Hull*, 21 W. Va. 601; Bart. Ch'y Pr. 83. The court can not plead it of its own motion. *Gee* v. *Hamilton*, 6 Munf. 32; *Smith* v. *Hutchinson*, 78 Va. 683.

That money of a husband diverted from payment of his debts, and expended in permanent improvements on his wife's land, can be followed by his then creditors, whether the act be done with fraudulent purpose or not, I regard settled in this State. *Lockhard* v. *Beckley*, 10 W. Va. 87; *Rose* v. *Brown*, 11 W. Va. on page 137; *Bank* v. *Wilson*, 25 W. Va. 242; *Burt* v. *Timmons*, 29 W. Va. 441 (2 S. E. Rep. 780). Mr. Bishop, in his work on Law of Married Women, (volume 2, § 472) expresses the opinion that it is only where a fraudulent purpose on the part of the wife is shown that her land can be so charged; but he admits that this opinion does not accord with the weight of authority. This doctrine is opposed in the cases of *Webster* v. *Hildreth*, 33 Vt. 457; *Corning* v. *Fowler*, 24 Ia. 584; *Robinson* v. *Huffman*, 15 B. Mon. 80.

The wife's property being thus chargeable, the question arises, to what extent? Counsel for Mrs. Spencer contends that she should be paid in preference to creditors the amount which her father invested for her; or at least, she should share ratably with them. It would seem to be hard and inequitable in the absence of actual fraudulent intent, that where a wife owns a lot, and a husband erects a house upon it, and the property is subjected by his creditors for

the amount expended by him in the erection of the house, and its sale produces only enough to satisfy the creditors, that the wife should lose her lot, and get nothing.

The constitution provides that the legislature shall pass such laws as may be necessary to protect the property of married women from the debts, liabilities, and control of their husbands; but this purpose, in the case just supposed —and it would often be the case—would be utterly defeated. The improvident, spendthrift husband would improve the wife out of the estate intended by her father as a home for her.

On the other hand, as our Court has said in former decisions, above cited, it would violate the principles of justice and the rights of creditors to allow a husband to invest his money in improvements on the wife's land, and thus divert it from the payment of his debts. How shall we adopt a principle which shall at once approximate justice both to creditors and the woman? She can justly protest against any principle which would rob her entirely of her separate estate, and creditors of her husband can protest against any principle which would allow the husband to expend his money to their prejudice in adding permanent increased value to her land.

We conclude that the property should be charged with the value of such improvements, and the value of her land, irrespective of the value of improvements made by the husband, should be ascertained, and that in case of the sale of the property for failure to pay the amount charged in favor of creditors, and the sale not producing enough to pay both the sums fixed for the value of her land and the value of the improvements, the wife and the creditors should share in the proceeds ratably upon the basis of the sums so fixed.

In the present case the value of the lot regardless of the improvement, and the money contributed by Mrs. Spencer or her father in her behalf to such improvements, should be combined, and the property charged in favor of the creditors with the proper sum for improvements by the husband; and, in the case of inadequacy of the proceeds of a sale of the property to pay both sums, she and the creditors

must share ratably on the basis just prescribed. It may be said that the former decisions of this Court do not lay down any such principle—and I concede they do not—and it may be said that this principle is contrary to them; but to this I reply that, at most, such conflict is only inferential, and that this particular point has never been considered or settled in this State, and we are not precluded by such decisions from adopting this principle. They do not settle it. We think the course here adopted calculated to attain justice, as nearly as is possible, in view of the conflicting rights of wife and creditors. It was adopted in Kentucky and Missouri in *Athey* v. *Knotts,* 6 B. Mon. 29, and *Kirby* v. *Burns,* 45 Mo. 234.

The case of *Bailey* v. *Gardner,* 31 W. Va. 94 (5 S. E. Rep. 636) does not conflict with our decision in this case, because there the earnings of the wife were held to be the property of the husband, as to creditors; and, as such earnings purchased the lot, that lot itself was the husband's, not the wife's though in her name; and moneys furnished the wife by her friends, and used in improvements on the lot, were held to have become part of the realty, and as the lot itself was liable, the money employed in improvements could not be separated and saved to the wife. In this case it is the reverse. The lot was bought by money of the father, and the money of the husband was used in improvements. That fact, carried out with some logical plausibility, would in this case lose to the creditors the money of the husband applied to improvements, since they have become part of the freehold. Far from militating against this decision, the language of Judge SNYDER in *Bailey* v. *Gardner,* that where the personal property of the husband has become part of the realty "the appropriate remedy for the creditor is to charge such real estate to the extent of the debtor's property thus made part of the realty," confirms our decision. The opinion in said case, prepared by President JOHNSON, contains strong reasoning in support of our view, and cites authorities.

The plaintiffs, under a cross-assignment of error, contend that the charge on the property in their favor by the decree is not large enough. The commissioner found the value of

the house, as deteriorated by time, to be five hundred dollars, and, on the basis that Mrs. Spencer contributed forty and her husband sixty per cent. to the cost, charged it with two hundred and ninety eight dollars and ninety two cents, with interest from the date of the erection of the house. Some general rule for charging improvements in such cases should be established. Our former decisions have not laid down the exact process, as it did not seem necessary in the cases. The separation of the improvements from the land in the process of estimation does not seem proper, as the improvements to be estimated are permanent in character, augmenting the total value, and have become part of the freehold, beyond removal. They have entered into the total value of the property. The ascertainment and adjustment of improvements is attended with difficulty, as Chancellor Kent remarks in 2 Kent, Comm. 336. Suppose, as in the case of the house in this case, the improvements are perishable, under the hand of time. Suppose the improvements injured by flood. Suppose the house destroyed by fire. Shall the original cost be charged? This would seem hard and unjust to the wife, guilty of no fraud. It seems to me that the value of the property, including improvements at the date of the ascertainment, should be ascertained, and that the value of the improvements put upon it by the husband should be ascertained as of the same date. This process may not, when applied, greatly vary from said sum of two hundred and ninety eight dollars and ninety two cents.

When should interest begin on the sum charged for improvements? When made, neither husband nor wife thought of repayment or creating a debt. The theory that any debt is created by reason of such improvements is discountenanced in the Iowa and Vermont cases cited above. Where there is a debt on contract, interest is a legal incident (*Shipman* v. *Bailey*, 20 W. Va. 140) but this is not a contract. When a suit is brought to charge the land, then for the first time does the creditor move against the property; then we may say the wife should discharge the demand; and I think interest should run, not from the date of improvements made, but the commencement of the suit, as was indicated in opinion in *Hoot* v. *Sorrell*, 11 Ala. 407.

Therefore, so much of the decree as subjects the tract of fifty one and three fourths acres of land of Sarah M. Neal to the plaintiffs' demand is reversed, and the land exonerated therefrom, and as to the plaintiffs' demand against said land the bill is dismissed; but, as a debt is asserted by said decree against said land in favor of H. S. Mitchell, she is retained as a party to the cause for further proceedings, so far as necessary, touching that debt, unless Mitchell waives relief in the cause. And so much of said decree as charges the lot of Cora Spencer with five hundred and ninety five dollars and eighty eight cents, with interest from 20th of November, 1888, is reversed, and the cause remanded, in order that a change may be made in accordance with the principles herein indicated.

REVERSED IN PART. REMANDED.