WILLIAM L. KELL, *Trustee, etc. v.* ARTHUR ANDREW CUMBY *et al.*

(No. 9311)

Submitted April 21, 1942. Decided May 19, 1942.

Lovins, Judge, dissenting.

*James S. Kahle* and *Harold F. Porterfield,* for appellants.

*Arthur F. Kingdon,* for appellee.

Kenna, Judge:

This chancery proceeding attacking a deed between others as a fraud upon the creditors of the bankrupt was instituted in the Circuit Court of Mercer County by William L. Kell, trustee in bankruptcy for Arthur Andrew Cumby, against Arthur Andrew Cumby and others, and from a decree for the plaintiff the defendants appeal. The bill of complaint, demurrer to which was overruled, contains the following allegations:

The adjudication of Cumby's bankruptcy on the sixth day of February, 1941, and the selection of Kell, trustee; Cumby's prior adjudication and discharge on August 11, 1934; that on June 8, 1934, Cumby arranged the preparation of a deed to his fourteen-year-old daughter, Ruth, of property upon which he, Cumby, had in 1932, built a small home in which he and his wife and five minor children had lived, the deed being filed as an exhibit, and its execution and delivery, though not alleged, not being questioned; in 1937, Arthur Andrew Cumby constructed a large addition to the house he had constructed upon the property conveyed to his infant daughter, and in so doing, bought of the Seyler Lumber Company between May eighth and November third materials at a price of $1106.10, of which amount a balance of $907.21 remains unpaid. The bill of complaint, in addition to the foregoing epitomized allegations contains the following language:

> "Plaintiff charges that the conveyance to said Ruth Cumby with reservations as shown in said deed to the bankrupt was fraudulent in fact and in law and made for the purpose of hindering, delaying and defrauding the creditors of the said bankrupt.
>
> "Plaintiff also charges that the said conveyance was voluntary; and also that the erection of the

improvements on said land by the bankrupt was fraudulent in fact and in law and that the same are subject to the plaintiff's claims on behalf of the creditors of the bankrupt.

"Plaintiff therefore prays a decree adjudging the said bankrupt to be the owner of the land and the improvements and subjecting them to the claims of the plaintiff on behalf of the creditors entitled thereto. Plaintiff also prays for such other relief—general or special—as may be equitable and proper."

It will be noted that the bill contains no definite allegations of specific fraudulent conduct on the part of Cumby, the bankrupt. Neither does it allege that the infant daughter, Ruth Cumby, who, according to the allegations of the bill, on June 8, 1934, received a conveyance of the property in question, and in doing so became vested in fact with the bare legal title, the substantial interest being the property of the bankrupt, was guilty of fraud, nor does it produce any set of definite circumstances that would so result. Nevertheless, the prayer of the bill is that the bankrupt be adjudicated the owner of the land and improvements, both of which be subjected to the claim of the plaintiff on behalf of the bankrupt's creditors.

The first assignment of error is that the bill of complaint alleges no cause for equitable relief.

The defendant's demurrer and answer assigns six specific reasons for deeming the bill insufficient, which we think unnecessary to separately note beyond saying that we believe the matters herein discussed are covered thereby.

We cannot see how the bill of complaint in its present form can be taken as other than an effort to establish a constructive trust in favor of the bankrupt and consequently his creditors, in the land including all the improvements, a part of which Ruth Cumby acquired while an infant by reason of a conveyance from her great-grandmother, Ettoley Compton, a part of the improvements having been placed upon the property three years after the deed became effective. The only allegation in the bill

of complaint that could remotely involve the bankrupt in the transaction by which his infant daughter received title or in contributing to the value of her property is that the bankrupt arranged with a Bluefield attorney for the preparation of the deed and that in 1932, he had constructed a small house upon the land conveyed, specifying neither the value of the improvements nor the value of the realty, nor their comparative value. After the effective date of the conveyance to Ruth Cumby, no constructive trust would attach to the realty save as the result of some inequitable conduct in which she knowingly participated. There is no such charge in the bill of complaint. Neither does the bill of complaint contain allegations, the consequence of which would justify a separate treatment of the land and the improvements thereto attached. The allegations of fraud contained in the bill are obviously legal conclusions which lack averments of fact to support them.

For the foregoing reasons we are of the opinion that the trial chancellor erred in failing to sustain the demurrer of the defendant to the bill of complaint, according the plaintiff leave to amend.

However, inasmuch as the trial chancellor, after requiring the bill of complaint to be answered, considered the cause on its merits and entered a decree not dealing with the deed under attack, but allowing the plaintiff to recover as a charge upon the land the value of materials furnished by it and used in the improvements placed upon the property in 1937, and Ruth Cumby to retain the value of the improvements placed thereon prior to that time if the property, when offered for sale brought enough to pay both and, if not, to divide the purchase price evenly, we think that it might be an ultimate economy of effort to comment upon the record's showing.

Etolley G. Compton, the grandmother of Arthur Andrew Cumby, and the great-grandmother of his daughter, Ruth Kinder, nee Cumby, in 1913 received a deed for a small tract of land in Mercer County situated near the Virginia line and near a small settlement in that state

known as Falls Mill. The record does not show when she began living upon this parcel of land, but it does show that in 1932, at the age of eighty-six years, she was living thereon, and that in that year, evidently with her consent, Cumby built a four-room dwelling thereon in which he, his wife and a number of minor children thereafter lived.

The transaction by which Mrs. Compton obtained title is not questioned, but it is asserted that the bankrupt later either directly or indirectly acquired an equitable interest in the land. Neither is the bankrupt's construction of a dwelling in 1932 directly attacked.

In October, 1933, A. A. Cumby filed his first petition in bankruptcy. He was discharged August 11, 1934.

In the meantime, the deed dated June 8, 1934, to Ruth Cumby was prepared and executed under circumstances fully revealed by the evidence, which we think it is unnecessary to recount, except to say that the grantee was not present when the deed was executed, and it was left, together with the certificate of acknowledgment, with the grantor to be later delivered to and recorded by A. A. Cumby, acting as the grantee's agent on November 5, 1934. The bill of complaint charges generally that this deed was a fraud in fact and made for the purpose of hindering, delaying and defrauding the creditors of the bankrupt. There is no debt proven that was then in existence.

A. A. Cumby, his wife and children continued to live in the dwelling without paying rent and in May, 1937, determined to build an addition to the dwelling and began the purchase of materials from the Seyler Lumber Company in Bluefield, Virginia, first in comparatively small quantities, for which he paid upon delivery. A little later, his first plans having been enlarged, he purchased the entirety of his needs, the Seyler Lumber Company extending him credit, according to his statement "upon his honor," and, according to their contention, due to their belief that he was the owner of the land upon which the building was to be constructed, not, however, accusing

Cumby of a fraudulent misrepresentation concerning ownership. The purchases were made without the participation of his daughter, Ruth, whose only knowledge of and connection with the construction of the addition apparently occurred when she was on the home place, saw building materials assembled there, and was told by her father that he had bought them for the purpose of building the addition. She then told him not to "mortgage" her place.

Ruth Cumby was married September 14, 1938, and continued to live with her parents intermittently until October, 1941, when she moved with her husband to Mississippi.

No effort was made by the lumber company to perfect a materialman's lien within ninety days of the last purchase. After the expiration of the ninety days, however, they did suggest to Cumby that the house needed painting and that they would gladly let him have sufficient paint for the purpose, which he declined to purchase.

In February, 1941, Cumby filed his second voluntary petition in bankruptcy without listing as an asset any interest in the property then used by him as a home for himself, wife and family for the improvement of which in the spring of 1937 the Seyler Lumber Company had advanced him credit in excess of one thousand dollars. The position of that company, based upon the testimony of Mr. C. L. Seyler, is that they did not know for more than a year after the last delivery of materials to Cumby that the land for the improvement of which the material was used was owned by someone other than A. A. Cumby, this in spite of the fact that in a letter addressed to Cumby and signed in the name of the lumber company by C. L. Seyler, the statement is made that "I have known since the time you got this lumber that the property was in your daughter's name."

Upon this state of the record, we are of the opinion that the proof does not disclose circumstances that would warrant the conclusion that the property under consideration was conveyed to Ruth Cumby as trustee for A. A.

Cumby, there having been no showing of fraud nor other questionable conduct connected with Mrs. Compton's deed. If that be true, the owner being then and now an infant, there is no way that she can be charged with the fraudulent avoidance of a materialman's lien for the value of the materials used in the improvement of her property.

The only other theory upon which we believe that the property of Ruth Cumby might possibly be charged with the cost of materials supplied by the lumber company is that she accepted a voluntary contribution of the materials used, made void by Code, 40-1-3, so that the gift may be followed within five years.

Based upon the foregoing observations, we are of opinion to reverse the trial chancellor's order overruling the demurrer to the bill of complaint, and to remand the cause for the purpose of an order sustaining the demurrer, granting leave to amend, and for further proceedings if that be done.

*Reversed and remanded.*

LOVINS, JUDGE, dissenting:

I do not agree with the majority opinion. The bill of complaint leaves much to be desired in the way of particularity, but I believe the allegations therein are sufficient. The bill, in substance, alleges that in the year 1932, A. A. Cumby erected a small house on land then owned by a relative, but now owned by his daughter. In the year 1933, he was adjudicated a bankrupt; that he and his family occupied the house; that in the year 1937 he purchased materials from a lumber company to build an addition to the house originally erected by him on the land; that there is a balance of $907.21 owing to the lumber company for materials going into the erection of said addition, and the sum of $100.00 due C. T. Bailes and $17.00 due George Carter for labor on said addition; and that in the year 1941 A. A. Cumby was again adjudicated a bankrupt. It is true that where fraud is relied on a general charge thereof is not sufficient but to my mind the

foregoing allegations of the bill allege sufficient facts on which a conclusion of fraud can be predicated. The transactions with reference to this land which are pleaded clearly allege fraudulent intent to Cumby.

The allegations charge that Cumby expended money in the improvement of property belonging to a third person, his daughter, and in my view the value thus added to the land of Ruth Cumby Kinder is subject to the claims of Cumby's creditors. *Burt* v. *Timmons,* 29 W. Va. 441, 2 S. E. 780; *Humphrey* v. *Spencer,* 36 W. Va. 11, 14 S. E. 410; *Hanley* v. *Loan and Investment Co.,* 44 W. Va. 450, 29 S. E. 1002; *Vandervort* v. *Fouse,* 52 W. Va. 214, 43 S. E. 112.

This is particularly appealing to a sense of fair dealing when it is considered that the debts were contracted for materials and labor which enhanced the value of the land. By accepting the benefit of the improvements made by her father, Ruth Cumby Kinder participated in his fraudulent acts. *Donehoo* v. *King,* 83 W. Va. 485, 98 S. E. 520.

In the case of *Hanley* v. *Loan and Investment Company, supra,* it was reasoned that creditors of a husband may subject the rents, issues and profits of land belonging to his insane wife to the satisfaction of their debts, where he had borrowed money and invested it in improvements on her land, and this principle applies with equal force where a father has contracted debts for placing improvements on the land of his infant daughter. I think the allegations of the bill are sustained by the evidence, and that the prayer thereof with respect to subjecting the improvements to the claims of Cumby's creditors was sufficient to justify the relief granted.

For the reasons hereinabove stated, I would affirm the decree of the trial chancellor.